CONVERSE et al. v. GALVESTON CITY CO. et al. (No. 7135.)*

(Court of Civil Appeals of Texas. Galveston. Oct. 19, 1916. Rehearing Denied· Nov. 16, 1916.)

1. CORPORATIONS ⚖══109—LOST CERTIFICATE—ACTION TO ESTABLISH OWNERSHIP—QUESTION FOR JURY.

In a suit against a corporation and the purchaser of its assets and stock to establish plaintiffs' ownership of a certificate in the corporation and for a new certificate in lieu of an alleged lost trustee's certificate for a share, and a right to share ratably with the other certificate holders in the accumulations of property and distribution on shares, evidence *held* to make plaintiffs' ownership of the certificate a question for the jury, and to support a verdict for the defendants.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 462; Dec. Dig. ⚖══109.]

2. LIMITATION OF ACTIONS ⚖══103(3)—LOST CERTIFICATE—ACTION TO ESTABLISH—LIMITATIONS.

Where plaintiffs' predecessor in 1881 petitioned a corporation for recognition as to the owner of a certificate and for the issuance of a renewal certificate showing such ownership, and such petition was refused by the company, plaintiffs' suit, subsequent to 1909, to compel recognition of their ownership of the same certificate, was barred by the four-year limitations prescribed by Rev. St. 1911, art. 5690.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. § 508; Dec. Dig. ⚖══103(3).]

3. CORPORATIONS ⚖══109—LOST CERTIFICATE—SUIT TO ESTABLISH OWNERSHIP — IDENTITY OF CERTIFICATE—EVIDENCE.

In a suit against a corporation and the individual claiming to have purchased all its assets and stock to establish plaintiffs' ownership of a certain numbered certificate, and for a new certificate in lieu of an alleged lost trustee's certificate, and for a share in accumulations and distributions, evidence *held* to show that a petition signed by plaintiffs' predecessors to have a certificate issued to them placed on the company's books, in their name in lieu of the lost certificate, related to the same certificate.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 462; Dec. Dig. ⚖══109.]

4. CORPORATIONS ⚖══109 — LOST CERTIFICATE—PETITION TO ESTABLISH OWNERSHIP — RESOLUTION.

In such suit, evidence *held* to show that a resolution on the minutes of the company denying the petition was a response to the petition.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 462; Dec. Dig. ⚖══109.]

5. CORPORATIONS ⚖══109—LOST CERTIFICATE—PETITION TO ESTABLISH OWNERSHIP — KNOWLEDGE ·OF RESOLUTION—EVIDENCE.

Evidence *held* to show that the parties to such petition by plaintiffs' predecessor, or their attorney, had knowledge or notice of the resolution denying the petition at or about the date of its adoption.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 462; Dec. Dig. ⚖══109.]

Appeal from District Court, Galveston County; Robt. G. Street, Judge.

Suit by Thomas Pierce Converse and the Second Presbyterian Church of the City of Houston against the Galveston City Company and Maco Stewart. Judgment for defendants, and plaintiffs appeal. Affirmed.

Geo. E. Mann, of Galveston, and Ramsey, Black & Ramsey, of Austin, for appellants. Maco Stewart, Edw. F. Harris, and Barret Gibson, all of Galveston, and Clarence Milheiser, of Houston, for appellees.

LANE, J. For the purpose of a comprehensive understanding of the nature of this cause and of our opinion to follow, we at the outset make the following statement, which we deem sufficient:

In 1886, the republic of Texas granted to M. B. Menard the league and labor of land, the present site of the city of Galveston. Menard had nine associates, including A. C. Allen, J. K. Allen, Samuel M. Williams, Wm. Hardin, and Thos. F. McKinney. Title was issued direct to Menard. Menard authorized one David White to issue certificates, each for an undivided $1/1000$ interest in the land. One of the White certificates was issued to one Jenkins, styled certificate numbered 2 out of Book B. Subsequently on June 20, 1837, Menard and Robert Triplett (the latter claiming an interest in a part of the league and labor adverse to the Menard Title) conveyed the league and labor to Levi Jones, Thomas Green, and William R. Johnson, as trustees, authorizing them (or any two of them) to issue 1,000 certificates against the property, and reciting that 400 thereof should be used to take up the 400 certificates that had theretofore been issued by Levi Jones, and directing that the said trustees sell the remaining 600 certificates at not less than $1,500 per share, which 600 certificates should be represented ⅔ by Menard and those claiming under him, and ⅓ by Triplett and those claiming under him. The recital in said deed of trust that Levi Jones had issued 400 shares was a fiction, as Jones had never issued any certificates, and was intended to cover the certificates

that had been theretofore issued by David White.

In April, 1838, M. B. Menard and other persons, whose identity is unknown, met at Galveston and organized an unincorporated partnership styled the "City of Galveston." The meeting elected Menard president, and J. K. Allen, Mosely Baker, William Hardin, and Thos. F. McKinney directors, authorized the preparation of by-laws, directed that a deed to the league and labor of land be secured from the trustees, Jones, Green, and Johnson, created the office of agent (same as secretary and treasurer), and instructed that a charter be procured.

On December 31, 1838, the company adopted a by-law, reciting that:

"It shall be the duty of the holders of certificates (meaning certificates that had been issued by Jones, Green, and Johnson) to file and register them, receiving in lieu thereof a certificate under the seal of the company, stating the number of shares to which the party is entitled, which last certificate shall not be transferable except on the books of transfer of the company."

In 1839, the trustees conveyed the land to the president and four directors of said city of Galveston, unincorporated. On July 29, 1840, the company directed that the agent, in opening a new stock ledger, shall express therein only shares issued by the company in conformity with said order of December 31, 1838.

The 1,000 certificates to be issued by the trustees were printed and bound in five books lettered "A," "B," "C," "D," and "E." Those in Books A and B were intended to be used in exchange for the certificates that had been previously issued by White. Those in Books C and D were "for the 400 shares to Menard." All of said certificates out of Books A, B, C, and D were signed in blank by Thos. Green and delivered to Levi Jones. The certificates bound in Book E were by Green retained and "kept for the parties in interest under Triplett."

Menard and Jones undertook, during the summer and fall of 1837, to sell the trustee certificates, "only intending to deliver the stock in case all could be sold." They failed to sell any stock, and thereupon "determined to come home and survey out the city, put up lots for sale, divide the stock among the parties entitled to it, and let them sell for themselves, or use the stock in buying property."

White had issued a certificate styled No. 2, Book B, to one Jenkins. The form of trustees' certificates in Book B recites that same is issued "in consideration of the return of the certificate of corresponding book and number as formerly issued by said Levi Jones (one of the first 400 shares)." This recital meant the return of White certificate of like book and number. White certificate B—2, that had been issued to Jenkins, was exchanged to the company, and when so exchanged was indorsed as follows: "Forfeited and exchanged to D. White by M. B. Me-

nard, L. Jones. Deposited by G. W. Grant." The trustees' certificates bound in said Books A, B, C, D, and E were each provided with a stub in the form of a receipt, to be signed for the certificate. The stub receipt for certificate B—2 is dated October 2, 1837, and is signed by John K. Allen, and is indorsed on the back "exchanged for old one."

The receipt given by John K. Allen for said certificate B—2 is as follows:

"Book B. No. 2. Received, this second day of October, 1837, a certificate of one share in the city of Galveston, No. 2, and a copy of the deed of the 15th June, 1837, appointing Levi Jones, William Johnson and Thomas Green, Trustees, and also a copy of the terms offered by them to the purchasers of shares, which I do hereby adopt, and take said share subject thereto. Witness my hand and seal.
          "[Signed] Jno. K. Allen.   [L. S.]
"Signed and sealed in presence of
          "[Signed] Samuel M. Williams."

J. K. Allen and A. C. Allen were universal partners prior to and up to June 16, 1838, and all properties in the name of either of them were owned one-half by each.

J. K. Allen died on the 15th day of August, 1838, unmarried and intestate, leaving surviving him a father and mother, Roland and Sally Allen, and his brothers A. C. Allen, his partner, H. R. Allen, S. L. Allen, George Allen, and Harvey Allen. Shortly after his death, A. C. Allen administered his estate. He closed the estate by sale of the property belonging thereto, as well as his own property, to his brothers, H. R. and S. L. Allen. Subsequently H. R. and S. L. Allen transferred the entire assets of the copartnership of A. C. and J. K. Allen to J. S. Holman for the benefit of their creditors under the direction of the said A. C. Allen, thus apparently passing the interest, if any, that J. K. Allen owned in certificate B—2 to J. S. Holman.

On the 18th day of March, 1840, H. R. Allen, George Allen, S. L. Allen, and Harvey Allen conveyed all interest which they owned in the property of J. K. Allen, deceased, to A. C. Allen, thereby transferring all interest they inherited in said certificate B—2 from J. K. Allen, if any, to said A. C. Allen.

A. C. Allen died in the year 1862 and left surviving him his wife, Charlotte M. Allen, and a daughter, Martha E., who married James Converse, and they inherited all the estate of said A. C. Allen.

James Converse and wife, Martha E., both died and left one child, T. P. Converse, plaintiff herein, who inherited their estate and their interest in said certificate B—2, if any such they had. All interest of Charlotte M. Allen in said certificate, if any, passed to the appellant Second Presbyterian Church of Houston, by her will.

On the 5th day of February, 1841 (Laws 1840–41, p. 122), Congress of the republic of Texas passed an act incorporating the stockholders of the Galveston City Company with-

out naming the stockholders or fixing the number of shares or capital of the company. This act provided that each stockholder should have one vote for each share that he owned.

In 1909, intending to dissolve the corporation, those claiming to be the owners of all the stock of said corporation sold to appellee Maco Stewart all the assets of said company and 24 shares of stock, which they claimed to be the entire stock of the company, and Stewart has ever since said sale asserted ownership thereto.

This suit was instituted by plaintiffs T. P. Converse and Second Presbyterian Church of the City of Houston, a corporation, hereinafter called appellants, against the Galveston City Company and Maco Stewart, appellees herein, in July, 1910, to require them to recognize the ownership of appellants in and to said certificate B—2, and for a new certificate in lieu of said alleged lost trustees' certificate for said share, and that they have a decree entitling them to share ratably and as fully as the other certificate stockholders have done, in all rents and accumulations of property of whatever nature by said company distributed to any share or shares since the date of issuance of said certificate to said J. K. Allen, deceased, and that appellants be decreed any division or distribution of assets in which their portion was set aside for the benefit of said one share, any accumulation of property of whatever nature to which said one share was entitled as their portion of dividends, etc.

Defendants answered and specially excepted to plaintiffs' petition: First, because it appears therefrom that the alleged cause of action is a stale demand, and because of laches and long delay in asserting their rights and the impossibility of obtaining proof of the matters in controversy, and hearing should not now be had. Second, they excepted to said demand because it showed upon its face that it was barred by the statute of limitation, and by many other exceptions, all of which were overruled by the court.

Appellees denied generally each and all of the material allegations of appellants' petition by which they sought to acquire recognition of their ownership in said certificate B—2. They denied that said certificate B—2 was ever issued to said J. K. Allen, deceased, and say that if it was so issued said J. K. Allen, or his partner, A. C. Allen, disposed of the same before the death of either of them, and that said certificate had been returned to said company, transferred to it, and canceled, and that if said Allens, or either of them, were ever the owners of said certificate, neither they nor any one claiming under them had any interest or ownership therein at the time of filing of this suit, or at any time after the death of either J. K. or A. C. Allen. They also plead-

ed the statute of limitation in bar of appellants' right to recover.

The cause was submitted to a jury selected by the parties under the instructions of the court as follows:

"(1) This is a suit by Thomas P. Converse, and the Second Presbyterian Church of Houston, a corporation, to establish their right to one share of stock in the Galveston City Company, and for relief against Maco Stewart individually on account of his alleged conversion of the assets of the company.

"(2) They claim that their right to the said share of stock is derived through their ownership of lost trustees' certificate B—2, issued to John K. Allen by Thomas Green and Levi Jones, trustees under the conveyance made to them by the proprietors of the land on which the city of Galveston is situated, dated June 15, 1837, said certificate being dated October 2, 1837. They deraign their claim of title to said certificate from John K. Allen, through his brother A. C. Allen and Charlotte M. Allen, wife of the said A. C. Allen, and Martha E. Converse, their daughter, and her husband, James Converse.

"(3) The defendants deny that plaintiffs are the owners of said certificate, and say that it was long since assigned or sold by John K. Allen or A. C. Allen, or by them or one of them sunk in and absorbed by the company. They also plead the statute of limitations of four years.

"(4) The burden of proof is on the plaintiffs to establish their present ownership of the lost certificate by a preponderance of the evidence, and if they have done so they are entitled to recover, unless defeated by the statute of limitations as hereinafter instructed. But if they have not done so, then the law is for the defendants. In determining this question of ownership, as in determining every fact in the case, you will look to all the facts and circumstances relating thereto in evidence, applying thereto your best judgment and your experience in the affairs of common life.

"(5) If you believe from the evidence that the petition signed by Charlotte M. Allen and James Converse, and purporting to be signed also by Martha E. Converse, admitted to be in the handwriting of F. Barnard, an attorney at law, since dead, referred or related to the certificate in controversy, and that the resolution on the minutes of the company of the 22d of March, 1881, was adopted in response to said petition, and further believe that the parties signing the same or their attorney had knowledge or actual notice of the same at or about the time of its adoption, then the law is for the defendants on the issue of limitation. But if you do not believe that said petition related or referred to said certificate, or do not believe that said resolution related or referred thereto, or if you do not believe that the parties thereto had knowledge or notice thereof, then the law on this issue is for the plaintiffs.

"(6) Applying these instructions, you are required to answer the following questions: (1) Does it appear from the evidence that the plaintiffs are the present owners of the lost certificate B—2? Answer, 'Yes,' or 'No.' (2) Did the instrument referred to in the fifth paragraph of this charge relate to said certificate? Answer, 'Yes,' or 'No.' (3) Was the resolution on the minutes of the company of the 22d of March, 1881, a response to said petition? Answer, 'Yes,' or 'No.' (4) Did the parties to said petition, or their attorney, have knowledge or notice of said resolution at or about the date of its adoption? Answer, 'Yes,' or 'No.'"

At the request of defendants the following special charge was also given:

"The jury will inquire whether they will or not indulge the presumption of a transfer by J. K. Allen or A. C. Allen of said certificate,

or a settlement made therefor by the Galveston City Company. The law on this point is that a transfer or settlement may be shown by circumstances, like any other fact; the presumption being a question for the determination of the jury. If then the jury believe upon a fair consideration of all circumstances in the case (those which the jury may believe to repel as well as those which the jury may believe favor such presumption) that the circumstances are consistent with the inference or presumption that such transfer or settlement was made as claimed by defendants, and that in view of all the circumstances it is more reasonably probable that such transfer or settlement was made, than it was not, then the jury are at liberty to presume and find that it was; and, if the jury deciding the issue in favor of the weight of the evidence on the point to be determined by them do so presume and find, you will answer question No. 1 with the word, 'No,' but if the jury do not so presume and find you will answer question No. 1 with the word, 'Yes.' "

The jury answered the questions submitted as follows:

"We, the jury, in answer to the questions propounded by the court, respond as follows: (1) Does it appear from the evidence that the plaintiffs are the present owners of the lost certificate B—2? No. (2) Did the instrument referred to in the first paragraph of this charge relate to said certificate? Yes. (3) Was the resolution on the minutes of the company of the 22d of March, 1881, a response to said petition? Yes. (4) Did the parties to said petition, or their attorney, have knowledge or notice of said resolution at or about the date of its adoption? Yes."

Upon the verdict and answer of the jury the court rendered judgment for defendants, Maco Stewart and Galveston City Company. From this judgment both the plaintiffs have appealed.

The substance of appellants' first assignment of error is that the court erred in submitting the question of the ownership of said certificate to the jury and in not peremptorily instructing them to return a verdict for plaintiffs as requested. Under this assignment appellants present the following propositions:

First. "The evidence was undisputed that the share of stock in question was issued to John K. Allen, and that the appellants claiming through and under him were entitled to the same."

Second. "The defense of limitation was not raised by the evidence and was not available to the defendants for the reason that the resolution of March 22, 1881, relied upon by the defendants as a repudiation of the claim and interest of the appellants' ancestors and predecessors in title, was not a repudiation thereof, but was, in substance and effect, an admission of such interest."

Third. "The defendant company, being a trustee for its stockholders, could not defeat the title of plaintiffs by relying on the statute of limitation without showing a distinct and unequivocal termination of the trust by repudiating the title of plaintiffs or their predecessors in title, and by assertion of title in itself; and appearing that this resolution was not such a repudiation, the issue of limitation was not raised by the evidence."

Fourth. "There was no evidence that trustees' certificate B—2 had ever been transferred to any other person by J. K. or A. C. Allen, and no evidence upon which to base a presumption of transfer."

Fifth. "There is no evidence of any character

in the record showing that this share has ever been surrendered to, canceled by, or settled with the defendant company, and no evidence upon which to presume such surrender, settlement, or cancellation. On the other hand, the evidence is undisputed and affirmative that the share is outstanding."

Sixth. "The evidence introduced on the issue of limitation shows no defense for the reason that it appears that the Galveston City Company was a trustee for its shareholders, and that, before it could rely on the plea of limitation to defeat the right and title of a shareholder, it must appear that it surrendered its trusteeship and renounced its holding as such, and it cannot, while holding the property of the corporation, assert title in and for itself to certificates of shares of stock in the corporation."

Seventh. "Plaintiffs having proven a prima facie case by undisputed evidence, and the defendants having failed to sustain with any evidence any of the defenses alleged, there was no issue for the jury, and the court should have given a peremptory instruction for plaintiffs."

We think the undisputed evidence shows that the certificate in question was issued to John K. Allen, and upon examination of the court's charge we find that the trial court so assumed. There were practically but two questions submitted to the jury by the court, which were:

First. Are the plaintiffs the present owners of said certificate?

Second. Was the cause of action alleged by plaintiffs barred under the statute of limitation?

[1] We think the action of the court in submitting the first question was authorized and the verdict of the jury supported by the following evidence relied upon by the defendants, to wit:

J. K. and A. C. Allen were two of the original directors of the unincorporated company. The company in 1838 adopted a by-law requiring that trustees' certificates be surrendered and that the partners of the company take out a renewal certificate stating the number of shares to which the party was entitled. In 1840, the unincorporated company directed that the agent open a stock ledger and show therein only those who held certificates issued in the name of the company. A. C. Allen, the surviving partner of the partnership of J. K. & A. C. Allen, in accordance with said order of 1838, took out a certificate showing that the interest then held by the Allens in the company amounted to 43 shares. There was testimony to the effect that the stock account of Allen was opened and closed and that the entire interest of the Allens was represented by said renewal certificate. Trustees' certificates out of Book B were issued in consideration of the return of the certificates of like book and number formerly issued by White. The record of certificate B—53, as it appears upon the stock register, has a diagonal line drawn in the column and at the place left for the insertion of the name of the person to whom it was originally issued. Plaintiffs concede that said certificate B—53 has been taken up and canceled by the company. B—2, the

certificate · in question, appears upon the agent's report and stock register in exactly the same manner as said certificate B—53; that is, there was a diagonal line drawn opposite to the number of said certificate in the column left for the name of the party to whom it was issued. The testimony of Cole in the Scott Case in 1869, admitted in evidence, was to the effect that the two Allens were among the original proprietors and that none of the original proprietors were among the stockholders at that time.

An examination of the agent's report and stock ledger shows that J. K. Allen owned two certificates, to wit, B—1 and B—2. There was testimony to the effect, which we think undisputed, that Allen sold B—1 to James Hamilton and that he sold one certificate to J. J. Henderson. If in fact he owned only two certificates, the one sold to Henderson must have been B—2, or at least the jury were justified in so concluding.

A. C. Allen, surviving partner of the partnership of J. K. & A. C. Allen, transferred the estate of J. K. Allen which was the property of the firm to H. R. and S. L. Allen, and subsequently they, by the direction of A. C. Allen, transferred the entire estate of the firm of J. K. & A. C. Allen to J. S. Holman. It would thus appear that such rights as the firm of Allens had in said certificate B—2, if any, was passed to Holman. At least, the jury was justified in so concluding from the testimony.

In October, 1840, A. C. Allen, surviving partner, appointed Menard attorney and agent to close all business the said Allens had with the company. The evidence introduced by the defendants tends to show that, while these transactions were being had, the Allens were notoriously insolvent, and owed the company over $100,000, which they were unable to pay. It might be said that, as Menard was at that time president of the company and was an intimate friend of both the Allens, had the Allens owned a share of stock of the company he would have known it and in settling the indebtedness of the Allens would have acquired for the company said certificate B—2. Menard was authorized by Allen to close all business with the company. Menard, as before said, was president of the company. The jury had the right to find from the evidence that the marking of this certificate B—2 in the same manner as B—53 was marked on the agent's report and register was intended to show that said certificate B—2 had been canceled, and especially so when it was shown that Menard was authorized by the Allens to cancel all business with the company.

From among the papers of Allen introduced in evidence there were produced five notes executed by Allen to the company, aggregating the sum of $84,300, payable to Galveston City Company, and across the face of each was written, "Paid by stock surrendered and canceled," and signed, "Borden, Agent."

In 1847, Allen addressed a petition to the company reciting his financial distress, that he "was once one of the largest stockholders," that he had used his wife's means, which he was unable to return, and that, feeling a desire to make reparation for the same, asked in her name that privilege be granted to construct a wharf as he contemplated making it available, by the use of his wife's means. In 1853, Charlotte M. Allen petitioned the company reciting the former petition, and the fact that the company had granted the same, and stated that she had been pecuniarily embarrassed, and asked further time in which to construct the wharf.

A. C. Allen, the surviving partner, died in 1862. An inventory of his estate was filed and does not show that he had any stock in the Galveston City Company.

We think the evidence already stated was sufficient to authorize the court to submit the questions complained of and was amply sufficient to authorize the jury to find that the plaintiffs did not own the certificate B—2 in question at the time of the trial of this case. We therefore overrule the first, fourth, fifth, and seventh propositions under the first assignment.

[2] By propositions 2, 3, and 6 under the first assignment, it is insisted, in substance, that the undisputed evidence shows that appellants' demand was not barred by the statute of limitation, and that the court erred in not so instructing the jury, first, because even if those under whom appellants claim certificate B—2 had petitioned the directors of the company in 1881 to recognize them as owners of said certificate B—2 and to issue to them a renewal certificate therefor and that they had notice of the resolution passed by said directors refusing to issue said renewal certificate for the reasons given in the resolution passed by them on the 22d day of March, 1881, such resolution was not a repudiation by the company of the ownership of the petitioners to said certificate, but, on the contrary, was an admission that said certificate was still outstanding and was valid in the hands of some one; that as the company was a trustee, holding the stock evidenced by said outstanding certificate, it could not defeat the title of plaintiffs by relying on the statute of limitation without showing a distinct and unequivocal termination of the trust by repudiating the title of plaintiffs or their predecessors in title, and by asserting title in itself; and, as the resolution was not such a repudiation, the issue of limitation was not raised by the evidence.

Those under whom appellants claim title to said certificate in the year 1881 petitioned the president and directors of the company to recognize them as the owners of said certificate and to issue to them a renewal certifi-

cate, and that the same be placed upon the books of the company in their names. Thereupon the board of directors passed the following resolution:

Office Galveston City Co.,
Tuesday, March 22, 1881.

The board of directors met at 11 o'clock a. m. on the call of the president.

Present: J. L. Darragh, Pres't, W. H. Goddard, J. H. Hutchings, and C. B. Adams.

\*   \*   \*   \*   \*   \*   \*   \*   \*

Duplicate applied for lost certificate No. 2 Book B refused. J. P. Cole, Secretary. The petition of James Converse and others for the issuance of a certificate of stock in lieu of one heretofore issued by the trustees to John K. Allen, alleged to have been lost or mislaid, was read, and after due consideration was respectfully declined, because said certificate of trustees' stock, being from its nature assignable by simple indorsement and delivery might now be in the hands of an innocent purchaser for a valuable consideration.

\*   \*   \*   \*   \*   \*   \*   \*   \*

Unquestionably the resolution was a refusal of the directors to recognize the petitioners as the owners of said certificate, and to issue a renewal certificate in their names as prayed for by them. We think such resolution was a substantial declaration to the petitioners that the company refused to acknowledge that it held said property in trust for them.

By article 5690, Revised Civil Statutes of this state, it is provided:

"Every action other than for the recovery of real estate, for which no limitation is otherwise prescribed, shall be brought within four years next after the right to bring the same shall have accrued, and not afterward."

It appears that the matters and things prayed for in the petition of those under and through whom appellants claim was for recognition of them, by the company, as the owners of certificate B—2 in question in this suit, and for the issuance of a renewal certificate showing such ownership. It further appears from the evidence that said petition and prayer was by the company refused. It also appears from plaintiffs' petition in this cause that they are now by this suit seeking through the medium of the courts to compel the Galveston City Company and Maco Stewart, appellees herein, to recognize them as owners of said certificate B—2. It is thus seen that the demand in the petition of 1881 and the relief prayed for in this suit are in effect one and the same. We think that when the company refused the demand and prayer in said petition of 1881, if the petitioners or their attorney had notice of such refusal, then the cause of action which the plaintiffs in this cause are now trying to enforce by suit accrued, and that as no suit was brought upon said accrued cause of action within four years after such accrual, the same is barred by the statute of limitation above quoted. Such being our view, for this additional reason we conclude that the trial court did not err in re-fusing to peremptorily instruct the jury to find for the appellants. We therefore overrule propositions 2, 3, and 6 under the first assignment.

By appellants' second assignment it is insisted that the court erred in submitting to the jury the question as to whether or not appellants are the present owners of said certificate B—2.

We have already, under the first assignment, held that the circumstantial evidence offered by appellees to show that J. K. Allen or A. C. Allen or their agent had disposed of certificate B—2, and that the same had been surrendered to the Galveston City Company and by it canceled, was sufficient to support the finding of the jury on that issue. We therefore overrule the second assignment.

What has just been said also disposes of appellants' third assignment.

[3] The trial court charged the jury as follows:

"If you believe from the evidence that the petition signed by Charlotte M. Allen and James Converse and purporting to be signed also by Martha E. Converse, admitted to be in the handwriting of F. Barnard, an attorney at law, since dead, referred or related to the certificate in controversy, and that the resolution on the minutes of the company on the 22d day of March, 1881, was adopted in response to said petition, and further believe that the parties signing the same or their attorney had knowledge of actual notice of the same at or about the time of its adoption, then the law is for the defendants on the issue of limitation. But if you do not believe that said petition related or referred to said certificate, or do not believe that said resolution related or referred thereto, or if you do not believe that the parties thereto had knowledge or notice thereof, then the law on this issue is for the plaintiffs.

"Applying these instructions, you are required to answer the following questions: \* \* \* Did the instrument referred to in the fifth paragraph of this charge relate to said certificate? Answer, 'Yes,' or, 'No.'"

Appellants make the action of the court in submitting such charge the ground of their fourth assignment.

The petition referred to is as follows:

"The State of Texas, Harris County. To the President and Directors of the Galveston City Company: The petition of James Converse and his wife, Martha E. Converse, and Mrs. C. M. Allen, residents of Harris county, State of Texas, that the said C. M. Allen is the surviving widow of A. C. Allen, deceased, and the said Martha E. Converse is the only child of the said A. C. Allen; that the said C. M. Allen and Martha E. Converse are the only heirs of A. C. and J. K. Allen, deceased, and are entitled to all the estate of the said A. C. and John K. Allen; that the said C. M. Allen and Martha E. Converse are the owners and are entitled to one share of stock of the Galveston City Company which was the property of A. C. Allen or John K. Allen at their decease as appears by the books of the Galveston City Company; that the original certificate for said share of stock has either been lost or mislaid and cannot be found after diligent search.

"Your petitioners pray that they may have the proper certificate of stock issued to them and placed upon the books of the company in their names.      James Converse.

"M. E. Converse.
"C. M. Allen."

The contention of appellants is that by its terms the petition does not relate or refer to said certificate B—2. We think such contention untenable. The agent's report and stock register show only two certificates issued to J. K. Allen, B—1 and B—2. It is conceded that he sold B—1 to James Hamilton. The lists alleged by plaintiffs to have been made out by J. P. Cole, once the secretary of the company, which they allege shows that according to the books of the company there was one, and only one, certificate outstanding in the name of J. K. Allen and that certificate was said certificate B—2. This list was the basis for appellants' suit. There was no claim by pleadings nor testimony offered with reference to any other certificate than B—2. We think all the evidence tends to show that the signers of the petition of 1881 were contending that they owned said certificate B—2, and none other, when said petition was presented to the president and directors of the company. The assignment is overruled.

What has been said with reference to the fourth assignment will also apply to the fifth assignment.

[4, 5] The substance of the contention made by the sixth, seventh, and eighth assignment of error is that the court erred in submitting to the jury the two questions, as follows:

"(2) Was the resolution on the minutes of the company of the 22d of March, 1881, a response to said petition?

"(3) Did the parties to said petition or their attorneys have knowledge or notice of said resolution at or about the date of its adoption?"

The contention of appellants is that there is no evidence that Frederick Barnard, who it is conceded wrote the petition, was the attorney of the petitioners; that there was no evidence that Frederick Barnard or either of the petitioners had any notice of the passage of the resolution by the board of directors of the defendant company; and that, in the absence of proof that Barnard was the attorney of the petitioners in writing, and presenting said petition, notice to him, if any, would not be notice to the petitioners, and therefore the resolution was erroneously admitted in evidence against plaintiffs, and the questions complained of erroneously submitted to the jury.

It is conceded that the petition set out herein and discussed under the fourth assignment was in the handwriting of Frederick Barnard, an attorney at law; that said petition was signed in person by James E. Converse and Mrs. C. M. Allen; and that the name of Mrs. Martha E. Converse was also signed to the same.

It is shown by the evidence that Mrs.

189 S.W.—35

Martha E. Converse died in 1886; that Mrs. C. M. Allen died in 1895; and that James E. Converse died in 1900, 5, 14, and 19 years, respectively, after the presentation of said petition and the passage of said resolution refusing the same. It is also shown that Mrs. C. M. Allen, one of the signers of the petition, was a business woman, owning a separate estate to which she gave her personal attention while her husband, A. C. Allen, was alive. We also think the jury would have been justified, from the fact that Mrs. Martha E. Converse and James E. Converse was the daughter and son-in-law, respectively, of A. C. Allen and Mrs. C. M. Allen, shown to have been people of intelligence, and engaged in large business ventures, in concluding that they were people of intelligence. This being true, it is inconceivable that, after writing a petition praying the board of directors to recognize them as the owners of said certificate B—2 to be presented to said board, the petitioners failed to inform themselves as to the action of said board with reference thereto. We therefore conclude that the court did not err in submitting the questions complained of, and that the evidence was sufficient to support the findings of the jury thereon. The sixth, seventh, and eighth assignments are overruled.

The contention made by the ninth assignment is fully answered and disposed of by what has been said under the foregoing assignments, and will not be further discussed.

By the tenth assignment, it is urged that the court erred in giving to the jury appellee's requested charge No. 14.

We have examined the charge and have reached the conclusion that no probable injury could have resulted to appellants by reason of the giving of said charge. The tenth assignment is therefore overruled.

By assignments 11 and 12 appellants complain of the court's main charge. We have carefully examined the court's charge, in view of the complaints made, and have reached the conclusion that the complaints made thereto are without merit. We overrule said assignments 11 and 12. We have examined and considered complaints made by assignments 13, 14, and 15, and overrule them.

After having carefully considered all the assignments of error presented in appellants' brief, we have reached the conclusion that the trial court committed no error which should cause a reversal of the judgment rendered by said court. The judgment of the trial court is affirmed.

Affirmed.