Howland S. DAVIS et al., Appellants,

v.

George C. FRASER et al., Appellees.

No. 7054.

Court of Civil Appeals of Texas.

Texarkana.

Dec. 2, 1958.

Rehearing Denied Dec. 30, 1958.

Winthrop, Stimson, Putnam & Roberts, Allen T. Klots, Merrell E. Clark, Jr., New York City, Choate, Hall & Stewart, Marcien Jenckes, Boston, Mass., Robertson, Jackson, Payne, Lancaster & Walker, W. B. Patterson, A. W. Walker, Jr., Dallas, for appellants.

Kelley, Drye, Newhall & Maginnes, Henry E. Kelley, Frederick T. Shea, New York City, Turner, Rodgers, Winn, Scurlock & Terry, George S. Terry, Kilgore & Kilgore, James F. McCarthy, Dallas, Wickes, Riddell, Bloomer, Jacobi & McGuire, New York City, for appellees.

FANNING, Justice.

Howland S. Davis and other named appellants have appealed from a judgment entered in a non-jury case by the 101st Judicial District Court of Dallas County, Texas, involving instructions given to the Trustees of Texas Pacific Land Trust, an unincorporated business trust, with respect to the disposition to be made by them of:

1. Certificate No. 390, issued to Blake Brothers & Company, a partnership, on June 26, 1888, for 100 shares of $100 each of proprietary interest in lands and property in the State of Texas conveyed by the Texas & Pacific Railway Company to said Trustees, and held by them under and pursuant to the terms of a Declaration of Trust dated February 1, 1888;

2. Declared and unpaid cash dividends subsequent to 1947 with respect to Certificate No. 390; and

3. 40,000 shares of the capital stock of the TXL Oil Corporation, a corporation formed in 1954 out of mineral interests and estates held by said Trust, being the number of shares attributable to Certificate No. 390 under the plan for the formation of said Corporation approved by said District Court in a previous proceeding.

The firm of Blake Brothers & Company, a partnership, went into voluntary liquidation in 1930 and the appellant, Howland S. Davis, is now serving as its liquidating partner. The appellants constitute all the persons who now have any interest in any asset of said partnership.

This suit was instituted by the Trustees of Texas Pacific Land Trust against appellants for a construction of the Declara-

tion of Trust and of their fiduciary duties thereunder with respect to the three items of property hereinabove enumerated, it being requested that said property be turned over to a depositary to be designated by the court with such powers of investment, management and control as the court might prescribe, and that the Trustees be relieved of all duties and responsibilities in connection therewith.

As requested by the Trustees in their original petition, filed on August 30, 1956, the trial court entered an interlocutory order directing that notice of this suit and the nature thereof be published once each week for four consecutive weeks in certain leading newspapers of general circulation in Boston, Chicago, New Orleans, San Francisco, Dallas and New York. This notice urged any person having any claim to Certificate No. 390 to intervene at any time prior to the trial, which commenced on April 15, 1957. This order also required the Trustees to send the same notice to all of the more than 5,000 registered owners of shares or sub-shares in the Trust located in all 48 states of the United States and in many foreign countries.

Appellants, in their answer, counterclaim and third-party action, alleged their ownership of Certificate No. 390, and that they were entitled to receive a duplicate certificate to replace said lost certificate and to receive the dividends due thereon and the shares of stock attributable thereto. Appellants in their third-party action requested that service by publication be had on the third-party defendants, being the unknown persons, if any, having or claiming any interest therein adverse to them. An attorney ad litem was appointed to represent all unknown claimants.

The trial court held that the appellants failed to establish their ownership of Certificate No. 390 and consequently were not entitled to recover any of its fruits. Also in its judgment the trial court directed the Trustees to cancel the registration of Certificate No. 390 on the books of the Trust in the name of Blake Brothers & Company and to issue a new certificate for the same number of shares in the name of Mercantile National Bank at Dallas, as custodian; to pay over and deliver to said Bank, as custodian, all cash dividends theretofore or thereafter declared with respect to Certificate No. 390; and to assign and deliver to said Bank 40,000 shares of the common stock of the TXL Oil Corporation, as custodian. The Trustees were relieved of all liability and responsibility in connection with said property, and said Bank, as custodian, was invested with various managerial powers with respect thereto but subject at all times to further orders of the court with respect to any sale, transfer, exchange, investment, reinvestment or other disposition of the property not specifically directed or authorized in the judgment.

In said judgment it was decreed that appellants take nothing on their counterclaim but "without prejudice to their right to bring another suit for recovery of same if additional evidence of their ownership and loss of such Certificate shall become available."

At the request of appellants the trial court filed his findings of fact and conclusions of law and certain additional findings of fact.

On February 16, 1952, Howland S. Davis and the other appellants in this cause sued George C. Fraser and the other Trustees of Texas Pacific Land Trust (who are also appellees here) and The Hanover Bank, as registrar of the trust, in the Supreme Court of New York. The facts and issues before that court and the disposition made of such case are set forth in the written opinion of that court, Davis v. Fraser, Sup., 121 N.Y.S.2d 643, 644, opinion by Justice Steuer as follows:

"The relevant facts in this unusual case begin in 1885 when the Texas & Pacific Railway Company went into receivership. The company, at that time, owned vast tracts of land. The

company had outstanding bonds which were a first lien on these lands. In 1887 a plan of reorganization of the railroad was approved. This plan provided that these lands be conveyed to trustees of the Texas Pacific Land Trust. The holders of the bonds had hitherto deposited them with a trust company and had received certificates of deposit in their stead. The trustees now issued, in exchange for these certificates of deposit, certificates of proprietary interest in the lands. The holder of a certificate of deposit for a $1,000 bond was entitled to receive 10 certificates of proprietary interest of a par value of $1,000 and $600 in new second mortgage bonds of the Railroad Company. The certificates of proprietary interest are generally called 'shares' and for convenience will be so designated here.

"At this time, 1888, and for at least thirty years prior thereto there was a partnership known as Blake Brothers & Company engaged in the stock brokerage business in Boston and New York. This firm continued in business until 1930, at which time it was dissolved. The plaintiffs are all the persons who are entitled to receive assets of the dissolved partnership. On June 26, 1888, Blake Brothers presented to the defendant, the Texas and Pacific Land Trust, 50 certificates of deposit for the bonds above described. These certificates were made out to various people and indorsed by them. None of them was made out to Blake Brothers. Blake Brothers in return received on July 5, 1888, five certificates of stock of the Land Trust, each for 100 shares, the numbers of the certificates being 386 to 390, inclusive. They also received thirty $1,000 bonds of the new issue of second mortgage bonds.

"Of the five certificates of stock, the four numbered consecutively 386 to 389, inclusive, have since been presented for transfer, the earliest on March 1, 1893, and the latest on February 13, 1902. All four of the certificates were endorsed in blank by Blake Brothers on October 1, 1898, and were presented by three different persons. The fourth (fifth) certificate was never presented and is the subject matter of this case. The plaintiffs claim to be the owner and by this action seek to have a new certificate issued to them, upon presentation of a proper bond indemnifying the defendant and also seek to recover dividends which have been declared, appropriate to the ownership of the stock.

"There can be little doubt that the remaining certificate (No. 390) has been lost. As such the right of the owner to have a new certificate issued is unquestionable. The only question is, are the plaintiffs the owners. The earliest complete record of Blake Brothers' assets now extant is the first audit by independent auditors made in 1924. It does not show the stock listed as an asset nor is there any reference to it as held in any capacity. There are earlier records of assets, more or less fragmentary, going back to 1920 which likewise do not mention this certificate. No one living today was connected with Blake Brothers in 1898. The nearest approach is a gentleman who entered their employ in 1890 as a messenger and who later served in various capacities of increasing responsibility. This witness, Mr. Frederick G. Bennett, undoubtedly has the most intimate knowledge of the affairs of Blake Brothers at about this period, is possessed of a notable memory exceptional in resisting the erosive process of the years. He had no recollection of this security as an asset of the firm.

"The history of the Texas and Pacific Land Trust until 1936 was not such as would necessarily bring it to the attention of its shareholders, particularly those whose interests embraced many

other securities. It did, from time to time, send information and notices to its listed shareholders but it never paid a dividend until that date. Its prior policy had been to employ its earnings to purchase certificates in the open market and retire them, with the result that today of the original $10,370,000 of par value there only remains outstanding $1,406,389.

"The dividend declared in 1936 applicable to certificate 390 was paid to a Blake Brothers & Company, which was not the original partnership. Upon the dissolution of the latter in 1930 a new firm was formed, which did not succeed to the assets of the old but purchased from the old the right to its name. This firm did business until 1935 when it dissolved and a third firm was formed in the same way. It was this third firm which received the dividend. Without going into the history of their dealing with the dividend, it was this and succeeding dividends which drew attention to the stock, caused inquiry to be made and resulted in the demands which are now embodied in this action. It also resulted in a refusal by the defendants to pay to the plaintiffs any dividends after plaintiffs' inquiries gave notice to it as to the situation in regard to this certificate.

"One other avenue of approach to a solution was also barricaded by time. The second mortgage bonds received by Blake Brothers with the stock certificates. In 1924 the Texas & Pacific Railroad offered to convert this bond issue into preferred stock. The bonds delivered originally to Blake Brothers were presented for conversion by the Missouri Pacific Railroad. That corporation has now no record of how or from whom it acquired the bonds.

"All of these facts do not show that plaintiffs' predecessors were the owners of the stock when the certificate disappeared. Even employing a presumption of continuance of ownership, little is to be gained. The situation might be different if the plaintiff were a private person. But it is customary and well known that brokerage firms and other financial institutions as well register securities belonging to their customers in their own names for the convenience of all concerned and the proof shows that Blake Brothers on occasion must have followed this practice.

"Plaintiffs urge that there is a presumption that, the registration being in Blake Brothers, they are the owners and that this presumption makes out a prima facie case of ownership. In a sense this is the law. A person sued as a stockholder is presumed to be one if his name appears on the stock register, the presumption being sufficient until rebutted. Hoagland v. Bell, 36 Barb. 57. In fact, the presumption exists in all situations where a third person is claiming against the stockholder or the company, Great Northern R. Co. v. Sutherland, 273 U.S. 182, 47 S.Ct. 315, 71 L.Ed. 596. But whether such a presumption is sufficient to establish ownership, even prima facie, as against the corporation is another matter. This is not a suit pursuant to the Uniform Stock Transfer Act, Pers.Prop.Law, Art 6, and could not be because the securities involved are not, in fact, corporate stock. So while the statutory provisions have no direct application, they are of value in determining the policy of this jurisdiction as made by both the courts and the legislature in connection with this question. The Stock Corporation Law, § 10 allows a corporation to disregard any transfer of stock unless registered on its books, thus limiting the presumption to a permissible assumption by the corporation. And in statutory proceedings for the issuance of a lost certificate it has always been the law that proof of registration in the name of

the petitioner is not sufficient but must· be followed by proof of ownership at the time of the loss, Matter of Speir, 69 App.Div. 149, 74 N.Y.S. 555. But as the statute operates to make the petitioner the new owner of the stock and anyone subsequently found to have been the owner at the time of the loss would be relegated to a claim on the bond posted as security, its provisions are understandably rigorous.

"The determination of this suit will be in the nature of a windfall to someone—either the plaintiffs or the certificate holders of the defendant. While it is true that the latter cannot possibly be the rightful owners of the lost certificate, it cannot be found that the plaintiffs are the owners unless and until they can bring competent proof to establish their ownership.

"Judgment is for the defendants, dismissing the complaint for failure of proof." (Interpolation ours.)

Thereafter, Howland S. Davis, et al., prosecuted an appeal from said judgment to the Appellate Division of the Supreme Court of the State of New·York and subsequently to the Court of Appeals, the judgment of the trial court being in each instance affirmed, and finally the motion to re-argue the decision of the Court of Appeals being denied. The decision of Davis v. Fraser, rendered on July 14, 1954, by the Court of Appeals of New York, is reported in 307 N.Y. 433, 121 N.E.2d 406, 412. Therein it was also stated:

"The judgment appealed from dismisses the complaint without prejudice. If plaintiffs are subsequently able to discover new evidence, the judgment does not prevent them from making another attempt to assert their title successfully."

Appellants' Points 1, 2 and 3 are as follows:

1. "The trial court erred in refusing to instruct the Trustees under Paragraph 22 of the Amended Original Petition that the Trust provisions completely protect the appellees from liability in paying cash and share dividends on Certificate No. 390 to appellants.

2. "The trial court erred in refusing to rule that the recorded ownership of Certificate No. 390 in appellants' firm name in 1888 and its delivery to the firm established title in the firm which continues to the present.

3. "The trial court erred in giving any effect in this proceeding to the decision of the New York Court in Davis v. Fraser, 307 N.Y. 433, 121 N.E.2d 406."

The evidence in the New York case of Davis v. Fraser was introduced in evidence in the case at bar in the trial before the 101st Judicial District Court of Dallas County, Texas. For all practical purposes the material evidence before the New York court and the Dallas court was virtually the same. A brief analysis of the additional evidence presented to the Dallas court is as follows: (1) Four more years had passed; (2) widespread notice of the pending suit had been given by publication of notices authorized by the trial court and by newspaper stories which appeared about the suit; (3) the Texas Pacific Land Office had its spin-off suit in the 101st District Court of Dallas County, Texas, to authorize formation of the new TXL Oil Corporation to develop its oil lands, and notified all registered holders about the action; (4) appellants Davis, et al., tried to trace ownership of the 30 second mortgage bonds received by Blake Brothers & Company, but found only:

(a) That they were bearer bonds ·with none registered;

(b) that the Railroad destroyed these thirty bonds;

(c) that Blake Brothers & Company had on April 22, 1899, deposited 80 bonds of the same series. The evidence gives the names of the persons depositing 11 of the original 30 second mortgage bonds—none being

Blake Brothers; yet it remains silent on the other nineteen.

(5) various claimants asserted claims to Certificate No. 390 but offered no evidence of probative force to substantiate their claims; (6) the circumstances of the discovery in 1956 of another certificate (No. A–1501) of the said Texas Pacific Land Trust issued in 1897, registered in 1897 in the name of a stock brokerage house and later found in 1956 in the safe of a deceased doctor by the heirs of the doctor, which heirs proved ownership of the certificate, which circumstances are not helpful to appellants' case.

The Declaration of Trust provides among other things the following:

"Such certificates shall be transferable by the holders * * * only on the books of the trust at its office in the City of New York and on surrender of the original certificates * * * and the trustees shall not be required to recognize any other interest or ownership than are thus evidenced.

\* \* \* \* \* \*

"In the event of a certificate being lost, the trustees, upon being satisfied thereof and indemnified, may under such reasonable regulations as they may prescribe, issue a duplicate certificate in the place of the one that has been lost * * *.

"Dividends shall be payable only to the persons who are by the books of the trustees shown to be certificate holders at the time the dividend shall be payable and the books may be closed by the trustees for a reasonable time for the payment of such dividend."

Each certificate on its face, after referring to the Declaration of Trust, states that the shares represented thereby " * * * are subject to the terms and provisions of said declaration and indenture of trust and are transferable only on the books of said trust on the surrender of this certificate."

As we understand appellants' argument under their first point, they contend that because of the above referred to provisions of the trust that the registration of certificate No. 390 in the name of Blake Brothers on the trust books entitles appellants as a matter of law to be declared the owners of Certificate No. 390 and its fruits. This argument was also made by appellants Davis et al., in the New York case and the New York Court of Appeals disposed of it in the following language:

"Insofar as concerns plaintiffs-appellants' claim to accrued dividends, the language of section 10 of the Stock Corporation Law and of article Seventh of the Declaration of Trust— 'Dividends shall be payable only to the persons who are by the books of the trustees shown to be the certificate holders at the time the dividends shall be payable'—is solely for the benefit and protection of the corporation or of the trust. The corporation, or, in this instance, the trust, could not be held liable at the instance of the actual owner if, in good faith, it had previously paid dividends to the record owner. Brisbane v. Delaware, L. & W. R. Co., 94 N.Y. 204, 207; Turnbull v. Longacre Bank, 249 N.Y. 159, 163 N.E. 135. *There can be no valid argument that a corporation or trust can be compelled to pay dividends to a registered owner in the face of notice of facts and circumstances which destroy any presumption that he is the owner. Clauses of this nature would hardly protect a corporation or trust, let alone compel it to make the payments, if with knowledge that the shares belonged to somebody else, it insisted upon payment to the registered owner.* This is indicated by the language in the Brisbane case at page 207 of 94 N.Y. that 'The administrator was clearly authorized to receive the dividends as the stock stood upon the books, and the defendant was bound to pay the same unless it had some notice

of a change of the title, or of a transfer of the stock, or such knowledge or information as would put it upon inquiry as to the ownership thereof.' In order to be consistent we must hold that neither the accrued dividends nor a new certificate are to be delivered to plaintiffs-appellants. If they have failed to sustain the burden of proving their ownership of the shares, they are not entitled to receive the dividends. The Utah case of Lindner v. Utah Southern Oil Co., 2 Utah 2d 74, 269 P.2d 847, does not aid appellants. There the actual owner of unregistered stock sued the corporation to recover dividends which had been paid to the record owner without notice of the actual ownership. A judgment for the plaintiff was reversed, and the claim dismissed upon the ground that the corporation was protected in the payment of dividends to the registered owner where it was uninformed that he was not the owner. That is different from holding that a corporation can be compelled to pay dividends to the record owner, if he has failed to prove that he is the owner when his title to the stock has been challenged." (Emphasis ours.)

In Cooper v. Citizens National Bank of Waco, Tex.Civ.App., 267 S.W.2d 848, 853, wr. ref., n. r. e., it is stated:

"The requirement that the stock transfer be recorded on the corporate books is to protect the corporation in cases where it has no notice that the transfer has been effected. For example, the corporation may safely rely upon the corporate list of stockholders in paying dividends and would not be liable to pay again to a transferee of whose rights it had no notice. Conversely, if the corporation has notice of the rights of a transferee, it must pay the dividends to the transferee even though the stock not be transferred on the corporate books. H. Seeligson & Co. v. Brown, 61 Tex.

114; Tombler v. Palestine Ice Co., 17 Tex.Civ.App. 596, 43 S.W. 896; Humble Oil & Refining Co. v. Blankenburg, 149 Tex. 498, 235 S.W.2d 891; Kerr v. Tyler Guaranty State Bank, Tex.Civ.App., 283 S.W. 601."

In the case at bar the trustees have been placed on notice that appellants Davis, et al., do not have certificate No. 390, have never seen it, and their records do not show that they or any of their partners ever did own it. In view of these facts the trustees are placed upon notice that there is a probable transferee.

■ We hold that the trial court correctly held that the provisions of the trust, taken with the naked fact of the registration of Certificate No. 390 in the name of Blake Brothers & Company, a stock brokerage company, do not as a matter of law require that appellants be declared owners of Certificate No. 390 and its fruits.

■ Appellants by their second point contend that the recorded ownership of Certificate No. 390 in appellants' firm name in 1888 and its delivery to the firm established title in the firm which continues to the present. Findings of fact Nos. 9, 10, 11 and 12 of the trial court in the Dallas District Court case, the case now on appeal, are as follows:

"9. I further find as a fact that the defendants and cross-plaintiffs, Howland S. Davis, William Shippen Davis, Edward S. Blagden, Howes Burton, Edward Streeter, Jose C. Harris, Hester L. Howe, Phyllis Hollander, and Anne Blake Squires (formerly Copeland), individually and as co-partners or assignees of the interest of co-partners, formerly doing business under the firm name of Blake Brothers & Company, have failed to prove that the firm of Blake Brothers & Company of Boston and New York held Texas Pacific Land Trust Proprietary Certificate No. 390 for its own account.

"10. I further find as a fact that the defendants and cross-plaintiffs, Howland S. Davis et al., have failed to prove that the firm of Blake Brothers & Company of Boston and New York did not transfer Texas Pacific Land Trust Proprietary Certificate No. 390 to anyone.

"11. I further find as a fact that the defendant and cross-plaintiffs, Howland S. Davis, et al., have failed to prove that Texas Pacific Land Trust Proprietary Certificates No. 390 became lost while the same was in the possession of the firm of Blake Brothers & Company of Boston and New York.

"12. I further find as a fact that in the trial of this case no evidence of 'ownership' of original Certificate No. 390 was adduced by the defendants and cross-plaintiffs, Howland S. Davis, et al., which was not before the New York Courts in the case of Howland S. Davis, et al. v. George C. Fraser, et al."

■ Appellants, claiming as successors in interest to the 1888 partners of Blake Brothers & Company, claim title to Certificate No. 390 and seek to compel the trustees appellees to issue a duplicate certificate for the 100 shares represented by Certificate No. 390, and to have delivered to them the accrued dividends, as well as Certificate No. 8487 for 40,000 shares of the TXL Corporation stock. We think that before appellants Davis, et al., would be entitled to such relief they would have the burden of showing that they are the present owners of Certificate No. 390 and that Certificate No. 390 has been lost or destroyed. See the following authorities: 13 Am. Jur. 402, Sec. 323; 18 C.J.S. Corporations § 266; Converse v. Galveston City Co., Tex.Civ.App., 189 S.W. 539, wr. ref.; Davis v. Fraser, 307 N.Y. 433, 121 N.E.2d 406.

In 13 Am.Jur. 402, Sec. 323, it is stated:

"A person seeking to compel the issuance to himself of duplicate stock certificates must show that the certificates have been lost or destroyed and that he is the owner of the stock. Duplicate certificates will not be ordered to be issued to a person who shows only a naked legal title."

In 18 C.J.S. Corporations § 266 p. 737, it is stated:

"In some jurisdictions, under statutes so providing, where a certificate of shares has been lost or destroyed and the corporation refuses to issue a new one, the owner may apply to the courts for an order requiring it to do so, or may bring an action to compel it to do so, on the applicant's furnishing a bond of indemnity. To entitle a stockholder to the statutory remedy he must bring himself within the provisions of the statute; but such statutes afford merely a cumulative remedy, unless by their terms they are exclusive, and do not exclude the preëxisting equity jurisdiction of courts to award such relief.

*"In any case, plaintiff, to be entitled to such relief, must show, not only that the original certificate has been stolen or otherwise lost, but also that he is the owner of the stock represented thereby and otherwise entitled to a certificate; \* \* \*"*. (Emphasis ours.)

In Converse v. Galveston City Co., Tex. Civ.App., 189 S.W. 539, 541, wr. ref., it is stated:

"The burden of proof is on the plaintiffs to establish their present ownership of the lost certificate by a preponderance of the evidence, and if they have done so they are entitled to recover, unless defeated by the statute of limitations as hereinafter instructed. But if they have not done so, then the law is for the defendants."

Practically all of the arguments made by appellants under their second point were made by them in the case of Davis v. Fraser, 307 N.Y. 433, 121 N.E. 406, and the New York Court of Appeals answered

these arguments in detail and overruled all of appellants' contentions. For a full discussion of same, reference is here made to said decision. We have carefully considered the New York decision in question and are of the opinion that it is not contrary to the authoritative case law of this state, that same was a sound decision and should be followed by this court. As above stated, there was no additional evidence of significant materiality introduced in the trial in the District Court of Dallas County, Texas, which was not before the New York court.

The cases of Galveston City Co. v. Sibley, 56 Tex. 269, and Yeaman v. Galveston City Co., Tex.Civ.App., 173 S.W. 489, cited by appellants, where the original registrations of the stock certificates there in question were in the names of private owners, and not as here, in the name of a stock brokerage firm, are not in point with the facts in this case for the reasons fully discussed in the New York case of Davis v. Fraser, supra. It is likewise our view that the case of Silisbee State Bank v. French Market Grocery Co., 103 Tex. 629, 132 S. W. 465, 34 L.R.A.,N.S., 1207, cited by appellants, is not in point with the facts in the case at bar.

We think findings of fact Nos. 9, 10, 11 and 12, supra, of the trial court are sufficiently supported by the evidence. We hold therefore that the trial court's findings that the appellants failed to prove their ownership of Certificate No. 390 and of its fruits are sufficiently supported by the evidence.

Appellants' 4th and 5th points are as follows:

"4. The trial court erred in issuing instructions to the Trustees which are without legal precedent, contrary to the provisions of the Declaration of Trust, and clearly erroneous.

"5. If any protection was needed by the Trustees it should have been in the form of an appropriate indemnity bond rather than the custodianship ordered by the court."

The judgment of the trial court in the case at bar provided generally for the Mercantile National Bank at Dallas as a custodian to operate under the supervision of the court with an appropriate bond. It directed the Trustees to deliver a duplicate Certificate No. 390 to said custodian, to take the cash dividends now held by the Trustees in the Special Account No. 1 in the Republic National Bank of Dallas, and also to take Certificate No. 8478 representing 40,000 shares of the common stock of the TXL Corporation. The judgment also set forth the powers of the bank as such custodian and provided generally for the filing of reports and the conduct of such custodianship. The trial court also made a number of specific findings of fact and conclusions of law in support of the above outlined provisions of the judgment of the trial court. Findings of fact Nos. 1 through 8, germane to this question, read as follows:

"1. I find as a fact that there is registered on the books of the Texas Pacific Land Trust in the name of Blake Brothers & Company a Certificate of Proprietary Interest No. 390 representing 100 shares of the Texas Pacific Land Trust.

"2. I find as a fact that the present whereabouts of Texas Pacific Land Trust Certificate No. 390 and the identity of the true owner thereof are unknown to the Trustees of said Trust and to this Court.

"3. I find as a fact that the Trustees of the Texas Pacific Land Trust now hold on deposit in a special account maintained by the Trustees with the Republic National Bank of Dallas cash dividends declared by the Trust with respect to the shares represented by Certificate No. 390 in the aggregate amount of $160,500.

"4. I find as a fact that the Trustees of the Texas Pacific Land Trust now hold in a safe deposit box rented by them from the Republic National Bank

of Dallas 40,000 shares of the stock of The TXL Oil Corporation represented by Certificate No. 8478 registered in the name of the Trustees, which shares are to be transferred and delivered to the unknown owner of Certificate No. 390 in accordance with the provisions of a prior judgment of this Court.

"5. I find as a fact that there are no provisions in the Declaration of the Texas Pacific Land Trust dated February 1, 1888, empowering the Trustees of that Trust to invest any income attributable to Certificate No. 390 of the Trust or to Certificate No. 8478 of The TXL Oil Corporation.

"6. I find as a fact that there are no provisions in the Declaration of the Texas Pacific Land Trust dated February 1, 1888, empowering the Trustees of that Trust to take any action with respect to the 40,000 shares of The TXL Oil Corporation stock represented by Certificate No. 8478 registered in their name.

"7. I find as a fact that the interests of the unknown owner of Texas Pacific Land Trust Proprietary Certificate No. 390 can best be protected by this Court appointing a Custodian who will at all times be subject to the orders and under the constant supervision of this Court and instructing and directing the Trustees of the Texas Pacific Land Trust to issue and deliver to such Custodian a new certificate for 100 shares of proprietary interest in the Texas Pacific Land Trust in place of Certificate No. 390; to assign and deliver to such Custodian a new certificate for 100 shares of proprietary interest in the Texas Pacific Land Trust in place of Certificate No. 390; to assign and deliver to said Custodian Certificate No. 8478 representing 40,000 shares of stock of The TXL Oil Corporation; and to pay over and deliver to said

Custodian all unpaid dividends already in respect to Certificate No. 390.

"8. I find as a fact that continued retention by the Trustees of Texas Pacific Land Trust Proprietary Certificate No. 390 and of the TXL Oil Corporation Certificate No. 8478 and of the dividends which have already accrued from the shares of stock represented thereby, or which may hereafter be paid with respect to such shares, places upon the Trustees of the Texas Pacific Land Trust custodial responsibilities and involuntary fiduciary obligations which are undefined, difficult to determine, and which are of increasing and burdensome pecuniary magnitude."

Conclusions of law Nos. 1, 2 and 3, of the trial court, relative to the above fact findings read as follows:

"1. I conclude that this Court under the Constitution and Statutes of the State of Texas, has the power and duty, to take under its jurisdiction and control the 100 shares of proprietary interest in the Texas Pacific Land Trust represented by Certificate No. 390, and all property and rights flowing therefrom and to hold and protect it through a special Custodian to be appointed by the Court, under appropriate orders of this Court for the benefit of the true owner thereof. Montgomery v. Owen, 37 S.W.2d 1101 (Dallas Court of Civil Appeals— Vaughn); Fryckberg v. Scott, 218 S.W. 21 (San Antonio Court of Civil Appeals).

"2. I conclude that this Court under the laws of Texas may not direct the Trustees of the Texas Pacific Land Trust to issue to the defendants and cross-plaintiffs Howland S. Davis, et al., a new certificate of proprietary interest in place of Certificate No. 390, claimed to have been lost.

"3. I conclude that under the laws of Texas this Court has the power to appoint a Custodian to have the custody and control of the said 100 shares of proprietary interest in the Texas Pacific Land Trust represented by Certificate No. 390, and the 40,000 shares of The TXL Oil Corporation stock represented by Certificate No. 8478 and in addition thereto any dividends now accrued, or which may hereafter accrue, from either of said certificates, and to order such Custodian to hold and invest such property under appropriate orders and supervision of this Court, Packer v. Wyndham, Gilb, 98 Prec.Ch. 412, 24 Reprint 184 (1715); Mills v. Hanson, 8 Ves. Jr. 91, 32 Reprint 286 (1803); Jacobs v. Jacobs, 100 W.Va. 612, 131 S.E. 455, 460 (1926); Morgan v. Penick, 62 S.W. 479, 23 Ky.Law Rep. 27, (1901); Catlin v. United States Fidelity & Guaranty Co., et al., 137 Ky. 208, 125 S.W. 297; Fisher v. Cunningham, 58 S.W. 399 (Tenn.Ch.App. 1899); Walters-Cates v. Wilkinson, et al., 92 Iowa 129, 60 N.W. 514 (1894)."

We think the trial court's fact findings 1 through 8, supra, are sufficiently supported by the evidence and the record in this case.

We are of the further opinion that the authorities cited by the court in support of his conclusions of law Nos. 1, 2 and 3, fully support such conclusions.

Under the peculiar and unusual fact situation in the case at bar, we think the trial court did not err or abuse his equitable discretion in entering the judgment of custodianship that he did enter instead of providing for an indemnity bond. Appellees' counter-point No. 6 (in reply to appellants' Point 5) reading as follows:

"To release the certificate, the accrued cash dividends, and the shares of TXL Oil Corporation stock to appellants in the face of their failure to prove ownership of the certificate, would place the trustees in a position where an indemnity bond would not give them adequate protection."

is thought to be well taken under this record and is sustained.

Appellants' 6th point, reading as follows:

"The decree of the trial court is contrary to the policy of the law favoring the quieting of title to property"

is deemed to be without merit under this record.

We think the trial court rendered a correct judgment under the record in this cause. Finding no reversible error in the record, the judgment of the trial court is affirmed.