Liability is sought to be predicated upon the claim that Murtha was the general agent of the Goelets in procuring the insurance. If this were the fact, liability would, of course, attach to them as though they acted in person. Such, however, was not the relation existing between those parties. Their relation was that of landlord and tenant, and in respect to the agreement which constituted it they dealt with each other at arm's length as principals, and Murtha no more became the agent of the lessors in procuring the insurance than he would in the engagement of actors to play in the theater. He made an independent covenant to insure these premises, not as agent of the Goelets, but as principal in his contract of lease; and when he procured the policy to be issued he acted for himself pursuant to the terms of his covenant. Consequently, there was no request of the lessors which could be implied through Murtha's act for the plaintiff to issue the policy. The lessee contracted with the brokers to procure the policy, and they procured it for him, and looked to him for payment. The plaintiff dealt with the brokers, and, while they undoubtedly could follow their principal when he was disclosed, and collect the premium from him, it conferred upon them no right to follow third persons, and collect the premium of them, even though they were the persons insured, in the absence of any contract by them to pay therefor. The plaintiff could only recover upon a contract, express or implied, which created liability against the persons named in the policy, and, as there was no such contract embraced within its terms or outside of it by independent stipulation, no liability could attach.

It follows that the judgment below was correct, and should, therefore, be affirmed, with costs. All concur.

---

(69 App. Div. 149.)

In re SPEIR.

(Supreme Court, Appellate Division, First Department. February 7, 1902.)

1. CORPORATIONS—LOST STOCK CERTIFICATE—ISSUANCE OF NEW CERTIFICATE.
    Laws 1892, c. 688, § 50, declares that, if a corporation refuse to issue a new certificate of stock in place of one lost or destroyed, the owner may have an order requiring the corporation to show cause why a new certificate should not issue. Section 51 declares that on the return of the order the court shall inquire into the truth of the facts stated in the petition, and, if satisfied that the applicant is the owner, make an order for the issue of the new certificate on the depositing of a bond sufficient to indemnify any person other than petitioner, who shall thereafter be found to be the owner, and that any person claiming rights under the certificate shall have recourse to the indemnity. Held, that it was error on a petition under the statute to order the issuance of a new certificate without taking proof of the facts alleged in the petition.

2. SAME—NOTICE TO INTERESTED PARTY.
    An application should not be granted under the statute until some notice of the application is given to those who may have or claim some interest under the certificate.

8. SAME—BOND.
    Where, on an application under the statute, it was shown that the market value of the stock represented by the alleged lost or destroyed certificate was $20,800, the penalty of the bond required by the statute should be at least $25,000.

Appeal from special term, New York county.

Application by Gilbert M. Speir and others, as executors of the estate of Gilbert M. Speir, deceased, for an order requiring the New York & Harlem Railroad Company to deliver a new certificate of shares of the capital stock of such railroad in place of a certificate issued to Gilbert M. Speir, deceased, which had been lost or destroyed. From an order requiring the delivery, the railroad company appealed. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, O'BRIEN, and INGRAHAM, JJ.

Ira A. Place, for appellant.

Silas B. Brownell, for respondents.

INGRAHAM, J. This application was made under sections 50 and 51 of the stock corporation law (Chapter 688, Laws 1892). Section 50 provides:

"The owner of a lost or destroyed certificate of stock, if the corporation shall refuse to issue a new certificate in place thereof, may apply to the supreme court, at any special term held in the district where he resides, or in which the principal business office of the corporation is located, for an order requiring the corporation to show cause why it should not be required to issue a new certificate in place of the one lost or destroyed. * * * Upon the presentation of the petition the court shall make an order requiring the corporation to show cause, at a time and place therein mentioned, why it should not issue a new certificate of stock in place of the one described in the petition."

Section 51 provides:

"Upon the return of the order with proof of due service thereon, the court shall, in a summary manner, and in such mode as it may deem advisable, inquire into the truth of the facts stated in the petition, and hear the proofs and allegations of the parties in regard thereto, and if satisfied that the petitioner is the lawful owner of the number of shares, or any part thereof, described in the petition, and that the certificate therefor has been lost or destroyed, and cannot after due diligence be found, and that no sufficient cause has been shown why a new certificate should not be issued, it shall make an order requiring the corporation, within such time as shall therein be designated, to issue and deliver to the petitioner a new certificate for the number of shares specified in the order, upon depositing such security or filing a bond in such form and with such sureties as to the court shall appear sufficient to indemnify any person other than the petitioner who shall thereafter be found to be the lawful owner of the certificate lost or destroyed; and the court may direct the publication of such notice either before or after making such order, as it shall deem proper. Any person claiming any rights under the certificates alleged to have been lost or destroyed shall have recourse to such indemnity, and the corporation shall be discharged from all liability to such person upon compliance with such order."

Upon the presentation of this petition to the special term, the New York & Harlem Railroad Company appeared and answered the petition, admitting that a certificate for 100 shares of its common capital stock was issued to Gilbert M. Speir on the 15th day of January, 1878, and that the petitioner, on or about November 26, 1901, applied to the treasurer of the said corporation for the issuance of a new certificate of stock in place of the one lost or destroyed, and that the New York & Harlem Railroad Company refused to issue a new certificate; and denying any knowledge or information sufficient

to form a belief as to each and every other allegation contained in the petition. There was submitted an affidavit of the treasurer of the New York & Harlem Railroad Company, showing that the par value of the capital stock is $50 per share, while the market value is about $208 per share. Upon the return of such petition the special term, without taking proof of the facts alleged in the petition, made an order granting the application, and from that order the New York & Harlem Railroad Company appeals.

We think the statute required that before the court should grant this application there should be evidence of the truth of the facts alleged in the petition, and which are denied by the corporation. The statute requires any person claiming under the certificate alleged to be lost or destroyed to have recourse to the bond required to be filed by the petitioner. Just how far this provision is valid as affecting the rights of a person not a party to the proceeding is unnecessary to determine, but certainly the court should not attempt to determine the rights of any person, whether before the court or not, without proof of the facts upon which the right to relief was based. The petition is that of one of the executors of Gilbert M. Speir, deceased, to whom a certificate of stock was issued, and he alone verifies the petition. The question as to the loss of this certificate, we think, should be proved by the testimony of witnesses, which the counsel for the corporation should have a right to cross-examine; and the fact of the loss of the certificate, and that it had not been transferred or disposed of by the person to whom it was issued or by his legal representatives, should be established by direct evidence. It appears by the petition that the certificate of stock was issued to Gilbert M. Speir on January 15, 1878, and that the said Gilbert M. Spier died in the city of New York on the 2d day of May, 1894, leaving a last will and testament, and that letters testamentary were issued to the petitioner, Gilbert M. Speir, Emily S. Arnold, and Julia S. Wright, and that the said executors duly qualified and entered upon the discharge of their duties. There was thus a period from 1878 to 1894 in which the deceased was the owner of this stock, and since his death the title to the stock had been in the executors of his estate. The allegation of the petitioner verified by one executor is not such evidence as the statute requires. We also think that, before this application should be granted, some notice of the application should be given to those who may have or claim some interest in the certificate. As before stated, the statute attempts to affect the rights and interest of those claiming an interest therein, and it would be quite clear that such a statute would be ineffectual unless some notice was given to those who would be in a position to claim an interest in the stock if such a claim existed. Certainly, before the court should grant such an order, especially in a case where there is no direct evidence that the certificate has been actually destroyed, notice of the application should be given by such publication thereof as would give an opportunity to any one claiming an interest in the stock to appear and be heard.

We also think that the penalty of the bond provided for by the order is insufficient. It appears that the par value of the stock is $50

per share, and that its actual market value at the date of the application was $208 per share, so that the market value of the stock was $20,800. We think that the penalty of this bond should be at least $25,000.

It follows that the order appealed from should be reversed, with $10 costs and disbursements, and the case remitted to the special term, to require notice of the application, and for such other proceedings as will conform to the views herein expressed. All concur.