SHORE LINE OIL CO., A CORPORATION, JOSEPH CUNNINGHAM, ET AL., DEFENDANTS AND APPELLANTS, *v.* LOREN KING, PLAINTIFF AND RESPONDENT.

No. 3621

February 28, 1951.                          228 P.2d 395.

*Morse & Graves,* of Las Vegas, and *Paul & Hastings,* of Los Angeles, California, for Appellants.

*Taylor & Gubler,* of Las Vegas, for Respondent.

## OPINION

By the Court, BADT, C.J.:

Although Shore Line Oil Company is named in these proceedings as one of the appellants, it did not appeal

from the judgment or order denying new trial. That corporation and Cunningham, together with a group of fictitious persons and corporations, were named in the original action as defendants. Cunningham is the sole appellant.

Respondent obtained a judgment decreeing that she was the owner of and entitled to the possession of certificates Nos. 3 and 4, representing 75,000 shares each of the capital stock of Shore Line Oil Company, a corporation, and directing the corporation to issue such stock to her. Such judgment was based upon findings which supported the plaintiff's contention that the certificates had been issued to her late husband, Samuel A. King, an attorney at law, in consideration of services performed and to be performed by him; that he had during his lifetime endorsed and delivered the certificates to her as a gift and that such certificates had been lost or destroyed. Although many issues of law and of fact are discussed in the briefs, the chief contentions of appellant are, first, that there was a lack of consideration or a failure of consideration for the delivery of the stock from Cunningham to King and, secondly, that there was a total failure of proof as to Mrs. King's ownership thereof.

The trial court filed a 15 page decision in which it reviewed the issues made by the pleadings, referred to the evidence and decided the issues in favor of the plaintiff. It then made its written findings showing the appearance of the plaintiff, the defendant corporation and defendant and appellant Cunningham, all through their respective counsel, and the fact that the defendant corporation offered no evidence; that Samuel A. King died August 27, 1943, and that plaintiff is his widow; that the corporation, for services performed and to be performed, caused to be delivered to King certificates Nos. 3 and 4 for 75,000 shares each of the stock of said corporation; that such had theretofore been issued in the name of Cunningham, who endorsed the certificates

in blank and delivered them to King, whereupon they became his property; that King gave the same to plaintiff, who at all times since was the rightful owner; that the certificates had been lost, destroyed or stolen and that plaintiff was unable to discover the whereabouts thereof, and that she had never disposed of the same; that she had demanded of the corporation the issuance of new certificates, but that such request has not been complied with; that the certificates are of one cent per share par value and of speculative and uncertain value. Negativing the allegations of the answer, the court further found that there was no failure of consideration; that it was not true that the title to the certificates had never passed from Cunningham to King; that it is not true that Cunningham is still the owner of the stock; and that plaintiff is not estopped to assert her title. The findings of fact were followed by the obvious conclusions of law entitling plaintiff to judgment upon the filing of a bond in the sum of $1,500.[1]

Appellant maintains that the record is devoid of any substantial evidence to sustain these findings. At the trial plaintiff called the corporation's secretary as an adverse witness, and had him produce numerous letters, which were introduced in evidence. These comprise in the main letters from King to Cunningham, although two of them are from other members of the law firm of Watson, King and Brode to Cunningham, and other letters from Cunningham to King. The firm of Watson, King and Brode maintained offices at Washington, D. C. The "King" of that firm was Samuel A. King. The firm of King and King, comprising Samuel A. King and Karl V. King, maintained offices at Salt Lake City, Utah. In order that the following correspondence may be more readily understood, it should be noted at the outset that

---

[1] Issuance by a corporation of new certificates in place of lost certificates upon posting bond, and the procedure for accomplishing this through a court order, are authorized and provided for under the provisions of sec. 1854.16, N.C.L.1943–1949 Supp., being sec. 17 of the uniform stock transfer act, Stats. 1945, p. 324.

the corporation owned no property other than certain oil prospecting permits assigned to it by Cunningham. In consideration of such assignment, the corporation issued all of its stock, 1,000,000 shares of the par value of one cent per share, to Cunningham, who became president of the corporation. The value of the stock depended entirely upon the validity of the prospecting permits issued by the federal government, and this in turn depended upon the title of the federal government to the lands in question, which comprised submerged lands below the low water mark within the three-mile coastal limit. The contemplated services of King and his firm had mainly to do with the establishment of such rights. Without such rights, the corporate stock would have no value. With such rights, it would have prospective value.

The earliest letter in the record is dated June 18, 1938, from Watson, King and Brode by K. V. King and from Karl V. King, addressed to the corporation in care of Cunningham, and reads as follows:

"The firm of Watson, King & Brode, and Karl V. King, agree to accept employment as counsel under the following terms and conditions;

"For and in consideration of the payment of $1000.00, and the further consideration of 150,000 shares of stock in your corporation, we agree to handle all matters before the Interior Department and the committees of Congress relative to the issuance of prospecting permits held by the corporation and to sustain said permits in the District, Circuit and Supreme courts of the United States, if necessary. All filing fees and legal taxable costs, however, to be paid by the corporation.

"If in the judgment of the Directors of the corporation and the undersigned, it is deemed advisable to bring mandamus proceedings for the purpose of compelling the issuance of prospecting permits by the Secretary of the Interior, then this will be included in the services hereunto agreed to be performed by us."

On February 7, 1939, Samuel A. King wrote to Cunningham with reference to King's assistance in interesting a Dr. Martin in investing money in the company.

On February 24, 1939, Samuel A. King reported to Mr. Cunningham the former's conference with Dr. Martin, looking toward interesting the doctor and his friends.

On March 7, 1939, James E. Watson, of Watson, King and Brode, reported to Mr. Cunningham of the former's conference with Senator Nye's secretary concerning certain proposed hearings on certain proposed bills covering the subject matter. The record then contains copies of Congressman Hobbs's resolution introduced in the House, Senator Nye's resolution introduced in the Senate and Mr. O'Connor's resolution introduced in the House, all in February, 1939 and all having to do with recommending proceedings by the government to assert and establish its title to all petroleum deposits in the submerged lands below low water mark.

On March 16, 1939 Cunningham wrote to Samuel A. King, % Watson, King and Brode, as follows:

"There is no change in the present situation since you were here other than we plan to make Las Vegas our head office, which has not been done at this time.

"I am enclosing to you herewith Certificate No. 3 for 75,000 shares and Certificate No. 4 for 75,000 shares. This is not in conformity with your request when you left here but inasmuch as you are the only one that I am looking to for support in the matter, I deem it advisable to let you make your own distributions as you see fit. This can be done by returning the stock to the transfer office which at the present time is the Nevada Agency and Trust Company, 139 North Virginia Street, Reno, Nevada.

"The enclosed stock will complete the first part of our contract. The second part, or cash retainer of $1,000.00 will be payable to you as, if and when I take in sufficient money from the sale of stock to justify the payment of

$1,000.00 to you. If those arrangements can be accepted by you satisfactorily, you may continue. Otherwise, advise me accordingly."

This letter was sent by registered mail and was receipted for by Samuel A. King's agent.

On March 18, 1939, Samuel A. King wrote Cunningham commenting on the Hobbs resolution (which was virtually the same as the Nye resolution), suggesting the need that it be amended to include tide lands as well as submerged lands, and also to make specific reference covering protection to valid pending applications for prospecting permits or leases and referring to an intended meeting the following Monday with Mr. Hobbs concerning this matter, and which had already been discussed by Mr. King with Mr. Hobbs's secretary.

On March 21, 1939, Samuel A. King further wrote Mr. Cunningham with a further analysis of the Nye resolution, and the fact that Mr. Hobbs was opposed to including tide lands with the submerged lands as covered by his resolution. He wrote him further and encouragingly on the same date, and stated: "My partners and I feel that we will succeed for you." Mr. Cunningham wrote Mr. Samuel A. King, % Watson, King and Brode, March 21, 1939 acknowledging receipt of the latter's last two letters, referring again to the stock certificates theretofore forwarded and trusted that "you received the same okeh and will carry through with the balance of the deal according to my former letter to you. Trusting that I may have your service and sincere efforts in the matter * * *."

On March 24, 1939, King again reported to Cunningham at some length, and on March 31, 1939, at further length, reporting on his arguments before the Senate Committee on the Nye resolution.

Further correspondence passed between the parties to which no particular reference need be made. Some twenty-six letters were introduced, all of which indicated services by King.

On April 7, 1939, Mr. Cunningham wrote Mr. King as follows:

"I have a number of your letters of recent date, and Dr. Martin has returned to Las Vegas, and we have had many discussions regarding how to proceed.

"You must bear in mind that I have spent four years time, and a sizeable fortune in promoting the different resolutions which were before the Senate and the House. Your various letters indicated your support of the different resolutions. Your presence at our luncheon at the Apache Hotel, when you were in Las Vegas, verified that to our luncheon guest.

"It has been our hope and belief that any resolution or Act of Congress would validate our claims, and our whole future was predicated on this belief. Now for you to change your attitude and oppose the different resolutions at this late date, leaves us without an explanation of any kind, and we are helpless and hopeless until you have fully explained your situation and point to some definite action.

"Please advise me to whom we might look now for help, and where may we expect that help. When are the executive committees to act, and who are the proponents and opponents of the resolution?

"I trust that you understand my position, and that you will explain fully and definitely who is supporting the resolution, and what procedure you have in mind, and when we may expect something definite. Our ability to speak encouragingly is our stock and trade in getting money for you."

The last letter quoted is strongly relied upon by appellant to indicate that Samuel A. King had been guilty of gross misbehavior in opposing the resolution favored by Mr. Cunningham, but a careful review of the entire correspondence satisfies us that the trial judge was justified in rejecting this contention. Apparently Mr. King felt that the only way in which powerful assistance

could be obtained and powerful objections eliminated was by having the resolution cover both the tide lands and the submerged lands.

As to the total lack of consideration and as to the failure of consideration, both of which are earnestly urged by appellant, we are obliged to hold that the contention is without merit. That the services were undertaken and that some of them were performed were found by the district court with substantial evidence to sustain the same. It was neither the duty nor the province of the district court to determine the precise amount or the reasonable value of those services. The problematical value of the stock and the uncertainty of the outcome are features that are common to arrangements of this kind. Appellant contends that King's letters to Cunningham of May 8, 1942 and of July 10, 1942, neither of which we have quoted, "treat all former negotiations as terminated." We do not so read them.

Appellant earnestly contends that the contract of employment, under which the 150,000 shares of stock were delivered, was of the firm of Watson, King and Brode and Karl V. King; that if the stock became the property of any of the attorneys, it belonged to the firm and possibly to Karl V. King; that it was essential for plaintiff to establish her chain of ownership and prove the transfer of title from these attorneys to Samuel A. King. They cite various authorities indicating that a partner has no right to give away partnership property and that a gift may be questioned not only by the donor, but by third persons claiming ownership and claiming to be damaged by the attempted gift. In like manner they attack the gift from Samuel A. King to his wife. It should be noted first that under the provisions of section 6 of the uniform stock transfer act cited in footnote 1 hereof, "The endorsement of a certificate by the person appearing by the certificate to be the owner of

the shares represented thereby is effectual * * * though the endorser or transferor * * * (d) Has received no consideration." N.C.L.1943–1949 Supp., sec. 1854.05. Under section 1 of the act, N.C.L.1943–1949 Supp., sec. 1854, the title to a certificate is transferred, among other ways, by delivery of the certificate endorsed in blank, and this is so despite provisions in the articles of incorporation or bylaws providing that the shares shall be transferable only on the books of the corporation, etc. While it is generally held that certificates of stock are not negotiable instruments within the meaning of the negotiable instruments law, in modern commerce we know that they pass from hand to hand by endorsement and delivery. Nothing in the present case indicates any necessity that we delve in the questions of bona fides, innocent holders, due course, etc., discussed in the briefs of both parties.

From the correspondence quoted and referred to, it will be seen that most of the letters were between Mr. Cunningham, signing individually, and Mr. King, signing individually. They were also so addressed. Some of the letters were addressed to King in care of his firm. The letters from King were on the firm stationery. The original acceptance of employment was on behalf of the firm and of Karl V. King. There was perhaps no great consistency in the precise use of names. We do not consider the matter of too great importance or that any technical break in an exact chain of title can defeat plaintiff's right to recover. Common law and statutory presumptions would indicate Samuel A. King's ownership of the two certificates of stock *possessed* by him and that any transactions between himself and his firm or associates in the practice of the law were fair and regular, and that his ownership and possession of the certificates, as between him and his law firm, were the result of the ordinary course of business. See N.C.L., sec. 9047.07, subds. 8, 11, 19, 20, 33, etc., 1931–1941

Supp. These presumptions are strengthened by the long lapse of time involved. As to the gift from Samuel A. King to Mrs. King, this is established by her uncontroverted testimony.

The question of estoppel is discussed at some length in the briefs, but some of the main elements of estoppel are so patently lacking that the subject does not warrant discussion.

Appellant attaches much importance to the $1,000 cash consideration which was to be paid by the corporation in addition to the 150,000 shares of stock and to the fact that no part of this $1,000 was ever paid and to King's insistence in many of his letters that some money should be paid to cover expenses. We are unable to draw from this situation the conclusions reached by appellant, namely, that this in some manner operated as a repudiation by King and his associates of the entire transaction. Their work continued despite this failure of payment.

With reference to the conflict in ideas as to the support of or opposition to the Hobbs resolution or the Nye resolution and with reference to appellant's contention that the value of the stock became established by the decision of the Supreme Court of the United States in United States v. California, 332 U.S. 19, 67 S.Ct. 1658, 91 L.Ed.1889, thus establishing the fact that Cunningham "was right in his legal thinking," and in which he received no legal aid from his attorneys, we can only repeat that the trial court was not called upon to measure the value of those services.

Appellant also contends that Mrs. King's request for the issuance of new certificates in her own name after a period of ten years during which interim the Supreme Court decision gave value to the same, "is unconscionable." We see no merit to this contention. There was no obligation on her part to have the stock transferred to her name on the books of the corporation.

The evidence as to the loss of the stock is also attacked as "wholly unsatisfactory." Mrs. King testified as to the circumstances under which she delivered the certificates to her sister to be placed in her safe deposit box and subsequently was unable to find the same. We need not review this testimony. The evidence was substantial and the trial court was entitled to believe its accuracy. It is further asserted by appellant that under our statutes authorizing the issuance of new certificates in place of lost ones "the corporation legally could not recognize any claim of the respondent to said stock until it be established by satisfactory evidence that the same was lost or misplaced." Not only did the trial court find the evidence satisfactory, but it is significant that the corporation itself did not defend the action, nor has it appealed from the judgment or order denying new trial. Indeed, its attorney stated in open court that it had no interest in the suit at all and did not care "who gets the stock."

Appellant states in his closing brief that the questions of law herein are not difficult nor are the questions of fact too involved, but that when reduced to the controlling questions the case becomes simple. We are inclined to agree with this statement, which accounts for the fact that we have found it unnecessary to indulge in any extensive citation of authorities. It may be true that the facts are not as conclusive as might be hoped for, but it is apparently the result of the very nature and circumstances of the case. While the evidence was largely documentary, it was not so in its entirety. Mrs. King, the plaintiff, Mr. Austin, secretary of the corporation, and Mr. Cunningham, defendant and appellant (president of the corporation for some ten years), all testified at some length. Accordingly, as to many if not most of appellant's contentions, we are guided by the familiar rule that we will not disturb the findings if they find substantial support in the evidence.

Finding no error, it is ordered that the judgment and the order denying appellant's motion for new trial be, and they hereby are, affirmed with costs.

EATHER, J., concurs.

HORSEY, formerly Chief Justice, did not participate, his term of office having heretofore expired.

MERRILL, J., did not participate, he having become a member of the court after said matter was argued and submitted.

ORDER DENYING PETITION FOR REHEARING

March 29, 1951.

*Per curiam:*

**Rehearing denied.**

The original opinion is corrected by striking out the words "as an adverse witness," in lines 3 and 4 of the fourth paragraph thereof.