HOWLAND S. DAVIS et al., Appellants, *v.* GEORGE C. FRASER et al., as Trustees of TEXAS PACIFIC LAND TRUST under a Declaration of Trust Made by CHARLES J. CANDA and Others, et al., Respondents.

Argued May 25, 1954; decided July 14, 1954.

*Allen T. Klots, Arthur E. Pettit, Peter H. Kaminer* and *Merrell E. Clark, Jr.,* for appellants. I. The evidence establishes that Blake Brothers & Company is the owner of the 100 shares represented by certificate No. 390. II. The law presumes ownership from record title. (*Great Northern Ry.* v. *Sutherland,* 273 U. S. 182; *Hoagland* v. *Bell,* 36 Barb. 57; *Matter of Hull Copper Co.,* 46 Ariz. 270.) III. The statutory

presumption of ownership in favor of the record owner of corporate stock provides a compelling analogy. IV. The presumption is one of ownership by the person presently registered as owner. V. Passage of time in the absence of adverse claims is also evidence of plaintiffs' ownership. (*Guilford* v. *Western Union Tel. Co.*, 59 Minn. 332; *Butler* v. *Glen Cove Starch Mfg. Co.*, 18 Hun 47; *Ganel* v. *Aleman Planting & Mfg. Co.*, 160 La. 422; *State ex rel. Seaton* v. *New Orleans & C. R. R.*, 51 La. Ann. 909; *Shore Line Oil Co.* v. *King*, 68 Nev. 183.) VI. The record contains no evidence which rebuts the prima facie case established by plaintiffs. (*Ruppert* v. *Brooklyn Heights R. R. Co.*, 154 N. Y. 90; *People* v. *Harris*, 136 N. Y. 423; *Lamb* v. *Union Ry. Co.*, 195 N. Y. 260.) VII. Plaintiffs' right to all dividends declared on certificate No. 390 follows not only from the evidence of their ownership of the shares but also from the special provisions of the declaration of trust. (*Brisbane* v. *Delaware, L. & W. R. R.*, 94 N. Y. 204.) VIII. The trustees are in no danger of personal liability. (*Costello* v. *Costello*, 209 N. Y. 252; *Purdy* v. *Lynch*, 145 N. Y. 462; *Seger* v. *Farmers' Loan & Trust Co.*, 176 N. Y. 589; *Matter of Spitzmuller*, 279 App. Div. 233, 304 N. Y. 608.)

*Marcien Jenckes, John L. Hall, Stuart C. Rand* and *Lawrence Howe, Jr.*, for Jose C. Harris and others, appellants. I. In this court of equity, defendant trustees being completely protected by law should be ordered to pay Blake Brothers & Company the dividends withheld by the defendants from that registered owner after 1947. Defendants have admitted liability with respect to prior dividends and in equity should honor the present claim. (*Brisbane* v. *Delaware, L. & W. R. R.*, 94 N. Y. 204; *Hopper* v. *Sage*, 112 N. Y. 530.) II. Defendants cannot justify their refusal to pay dividends to plaintiffs on any claim that they have " reason to believe " plaintiffs are not the owners. (*Fidelity & Deposit Co.* v. *Queens Co. Trust Co.*, 226 N. Y. 225; *Turnbull* v. *Longacre Bank*, 249 N. Y. 159; *Roberts* v. *Ely*, 113 N. Y. 128; *Richards* v. *Robin*, 175 App. Div. 296, 225 N. Y. 719.) III. Defendants should not be permitted to escape liability to plaintiffs by failing to use the recognized and established presumption protecting them. IV. Plaintiffs are entitled to a new certificate for 100 shares

of proprietary interest in the defendant trust to replace the lost original certificate No. 390 — upon their furnishing a suitable indemnity bond.

*Francis S. Bensel* and *Frederick T. Shea* for respondents. I. Plaintiffs failed to establish that Blake Brothers & Company was and continued to be the actual owner of the shares represented by certificate No. 390. (*Matter of Biglin* v. *Friendship Assn.*, 46 Hun 223; *Matter of Speir*, 69 App. Div. 149; *Foltis, Inc.* v. *City of New York*, 287 N. Y. 108; *Moore* v. *Rosemond*, 238 N. Y. 356; *Wellisch* v. *John Hancock Mut. Life Ins. Co.*, 293 N. Y. 178.) II. Plaintiffs are not entitled to receive the dividends declared and payable on the shares represented by certificate No. 390. (*Turnbull* v. *Longacre Bank*, 249 N. Y. 159; *Tyson* v. *George's Creek Coal & Iron Co.*, 115 Md. 564.)

VAN VOORHIS, J. This is an action for an adjudication that plaintiffs are the owners of 100 shares of proprietary interest in Texas Pacific Land Trust, and directing defendant trustees to pay to plaintiffs $102,500 representing all dividends heretofore declared but not paid with respect to said 100 shares, and directing defendants to issue a new certificate in place of the original lost certificate for these 100 shares in this land trust. The judgment entered upon the decision of the trial court dismisses the complaint " for failure of proof and without prejudice ", and this judgment has been affirmed unanimously by the Appellate Division, which granted leave to appeal to this court.

The participation in this trust to which plaintiffs claim to be entitled arose out of the reorganization in 1888 of the Texas and Pacific Railway Company, which owned vast tracts of land in Texas. It had outstanding bonds which were a first lien upon these lands. In order to satisfy the claims of the bondholders these lands were conveyed to the Texas Pacific Land Trust and shares of beneficial interest in the trust were issued to bondholders upon the surrender of bonds. The holder of a $1,000 bond became entitled to ten shares in the trust and $600 in new second mortgage bonds of the railroad.

In July, 1888, a partnership known as Blake Brothers & Company, hereafter called " Blake Brothers No. 1 ", members of the Boston and New York Stock Exchanges, acquired 500 shares

of the trust by presenting in exchange therefor $50,000 of the old railway bonds. (Instead of presenting the bonds themselves, certificates of deposit issued by a reorganization committee were presented representing bonds in this amount.) Blake Brothers also received, in accordance with the reorganization plan, $30,000 in new second mortgage bonds of the railroad.*

Four of the five certificates of 100 shares each registered in the name of Blake Brothers were transferred out of their names on the books of the trust, all of them having been indorsed by a member of the firm on October 1, 1888. They were presented for transfer by different persons, several by other stock exchange firms, between March 1, 1893 and February 13, 1902. The remaining certificate (No. 390) has never been presented for transfer and is the one which is now lost. In 1888, when these certificates were issued, the market value of the 100 shares represented by the lost certificate was $1,800. By 1898 it had fallen to $500. By 1952, due to the discovery of oil beneath these lands, the original 100 shares were worth $1,280,000. Of all of the original certificates issued in 1888, this certificate is the only one outstanding. Ever since 1888 they have been listed and traded upon the New York Stock Exchange.

In 1936 the first dividend was declared by the land trust. It was sent to a then existing firm known as Blake Brothers & Company. The original firm bearing the same name, which had been organized in 1858, went into liquidation in 1930. It is known as Blake Brothers No. 1. Blake Brothers No. 2, which did not succeed to the securities owned by the first firm, lived out its life between 1930 and 1935, and the firm which received the 1936 dividend was Blake Brothers No. 3, which likewise did not succeed to the securities owned by Blake Brothers No. 1. Although the partners of these firms and their successors in interest were not identical, they have composed their differences over this part of the controversy, and the plaintiffs in this action now represent all of the interests of those who were partners of the first firm known as Blake Brothers & Company, to whom, if to any of these partnerships, the shares represented by this lost certificate belong.

---

*. It is not possible to trace the ownership through what became of these second mortgage bonds. All of those which were issued to Blake Brothers were presented for transfer, but the railroad's books do not indicate by whom.

In summary, there is no evidence indicating that Blake Brothers No. 1, or any of the other firms by that name, ever did own these 100 shares of the land trust, except the circumstance that they were registered in the firm name in 1888, and that no adverse claim apparently has ever been made since then. Section 178 of the Personal Property Law, authorizing the issuance of a new certificate in place of a lost or destroyed certificate of corporate stock, is not technically applicable inasmuch as these shares were participations in a land trust, and were not stock in a corporation. Nevertheless, while this statutory provision has no direct application, it relates to a similar subject and aids in determining the policy of this jurisdiction as made by the courts and Legislature in connection with this question. In *Matter of Speir* (69 App. Div. 149, 151), it was held that before a new stock certificate could be issued under the predecessor of this statute it was necessary to prove not only that the certificate had been lost but '' that it had not been transferred or disposed of by the person to whom it was issued or by his legal representatives ''. This fact, the opinion said, '' should be established by direct evidence.'' In *Matter of Biglin* v. *Friendship Assn.* (46 Hun 223, 224) it was said: '' But to bring the case within the statute the two facts must be maintained, that the petitioner is the owner of the shares, and that such shares have been lost or destroyed and cannot after due diligence be found. These are the jurisdictional facts upon which the court is to act, and without proof of such facts it has no authority to make the direction mentioned in the statute.''

In order to satisfy this test, plaintiffs contend that the books of the land trust in which these shares are registered in plaintiffs' name, are presumptive evidence of ownership in the plaintiffs according to analogy with section 10 of the Stock Corporation Law, which states that '' The stock book and books of account of every stock corporation shall be presumptive evidence of the facts therein so stated in favor of the plaintiff, in any action or proceeding against such corporation or any of its officers, directors or stockholders.'' Plaintiffs contend, moreover, that the passage of sixty-six years without the assertion of adverse claims is evidence both of the ownership in plaintiffs and of the loss of the certificate, citing *Guilford* v. *Western Union Tel. Co.* (59 Minn. 332); *Butler* v. *Glen Cove*

*Starch Mfg. Co.* (18 Hun 47); *Ganel* v. *Aleman Planting & Mfg. Co.* (160 La. 422); *State ex rel. Seaton* v. *New Orleans & Carrollton R. R. Co.* (51 La. Ann. 909).

These considerations might move us to the conclusion that a presumption of ownership of these shares in plaintiffs flowed from these circumstances, except for two other factors taken in conjunction with each other. It is not necessary to decide whether either of those factors separately would be enough to defeat plaintiffs' claim. They are that Blake Brothers No. 1 was a member of the New York Stock Exchange, and that it is and was then customary for member firms to register securities belonging to their customers in their own names for the convenience of all concerned. The evidence established that Blake Brothers followed this custom and practice. One of the partners frankly admitted that, after conducting an extensive investigation, he did not know whether the shares represented by the certificate in question were acquired by the firm for its own account or for the account of one of its customers. The true fact would have been shown upon the firm's blotter or day book, as well as upon its ledger sheets and the ledger sheets of its customers. Unfortunately these books of plaintiffs were destroyed about every seven years, and diligent search failed to uncover books of the firm prior to 1920. The books for subsequent years contained no mention of certificate No. 390. In 1924, and this leads to the second factor why the presumption of ownership in plaintiffs was properly not applied, an independent audit of Blake Brothers No. 1 was conducted by an accounting firm known as Leslie Banks & Company. The New York Stock Exchange inaugurated a custom of annual audits of stock exchange firms at about that time. The 1924 audit of this firm's accounts listed the assets of the firm in detail, but without showing any right, title or interest in the Texas Pacific Land Trust.

Shares in this land trust were listed, as has been said, upon the New York Stock Exchange and were traded during all of the years since 1888, when the certificates were originally issued. Although it is argued in appellant's behalf that this is a circumstance favorable to them, in that one might expect adverse claims to have been made to these shares if they were not owned by Blake Brothers No. 1, it operates also in favor of

respondents by tending to indicate that this stock exchange firm would have been sufficiently market conscious to have been aware of the existence of these assets, if they belonged to it, and to have caused them to be listed in the auditor's statement of 1924. By that time their value had become more than negligible. These shares had a market value in that year which varied from $26,000 to $32,500. Appellants seek to impugn the probative force of their audit made in 1924 as evidence that these shares were not then owned by Blake Brothers, by calling attention to the circumstance that the auditors criticized the bookkeeping methods of this firm. For example, the auditors called attention to failure to keep a stock book in the New York office, the showing of overages and shortages in shares of stock held for the account of customers, and mentioned the circumstance that in two instances at least (one of them in the Boston office), employees had embezzled funds of the partnership. Although these criticisms probably indicate that the bookkeeping and clerical work were not of the best according to present day standards, this attack upon their accuracy is scarcely sufficient to demonstrate that the books and records of Blake Brothers should be disregarded insofar as they display this omission among the assets of the firm. The circumstance that these 100 shares represented by certificate 390 of the Texas Pacific Land Trust nowhere appear to have been listed as assets in 1924, is certainly some evidence having probative force to show that they were not then owned by the firm. Coupled with the fact that they were accustomed to carry shares of their customers in their own name, the inference is as strong that the certificate was surrendered to a customer to whom it belonged as it is that the registration in the street name indicated ownership by Blake Brothers. Even if Blake Brothers No. 1 had been the beneficial owner in 1888, the absence of any record of these shares as part of the assets in 1924 tends to establish that they had then been sold to others.

The evidence indicates that it was customary for Blake Brothers, like other stock exchange firms, to take regular inventories of the securities on hand to determine whether the assets listed on the books actually were in the firm's possession. Annual reports of the trustees were sent to the certificate holders, and a considerable number of meetings of the trustees

were held of which notice was given during this interval of time. These are circumstances which cut both ways since, as by the trading of Texas Pacific Land Trust shares on the stock exchange, both the members of Blake Brothers and any adverse claimants would have been likely to have been alerted by these notices. The fact appears to be that no one was alerted until dividends commenced to be paid to Blake Brothers No. 3 in 1936. This reasoning operates to the advantage of respondents, and calls for affirmance rather than reversal of the judgment inasmuch as the burden of proving that the shares belonged to them rested upon plaintiffs-appellants. The circumstance that none of the members of the firm of Blake Brothers No. 1 called attention to the oversight in failing to carry these shares upon their books, if oversight it was, notwithstanding the constant prodding which reading the financial pages of the newspapers and receiving these notices must have given to them, indicates at least as strongly that they did not then belong to the partnership as it does the reverse. Therefore the parties having the burden of proof should fail rather than their adversaries.

The circumstances which appellants set forth which are alleged to confirm their title are really without force or effect in the absence of further evidence. Plainly these shares traveled around the street from one firm or private owner to another without transfer on the books of the Texas Pacific Land Trust. That is indicated by the failure to present the other four certificates for transfer, before the lapse of a number of years after they had been indorsed by Blake Brothers. Likewise, the presentation of two of them by two other stock exchange firms (Robert Goodbody & Co., and Rolston & Hooley) is of some significance in that connection. The mere circumstance that the other four certificates in Blake Brothers' name were presented for transfer whereas certificate No. 390 was not presented proves nothing. Neither is appellants' contention substantial that the railroad bonds presented by Blake Brothers to obtain these 500 shares of proprietary interest in the trust were registered in other names and added up to exactly $50,000 face amount. It is contended that this is the sort of speculative " professional " transaction which a broker-

age house typically engages in for its own account, yet that conclusion is speculative. It might have been engaged in for the account of a customer. (Exhibits 5 and 6 show the denominations, and names of former owners, of these railroad bonds which were presented by Blake Brothers; the fact fails to establish the point at issue that as much as $10,000 was not previously registered in any one name. Any customer of Blake Brothers could just as well have paid for assembling them in sufficient quantities to enable the acquisition of 100 share certificates in the land trust, and it does not follow with any degree of cogency that this was done by Blake Brothers for their own account.) Neither is it particularly significant that the original owners of these railroad bonds (or certificates of deposit, to be exact), had caused to be issued to themselves in their own names other certificates for other shares of the trust. No greater significance seems to attach to the striking out of the address of Blake Brothers on the books of the trust from 5 Nassau Street to 25 Broad Street (cf. plaintiffs' Exhibit 2). That merely tends to indicate that this lost certificate continued to be registered in Blake Brothers' name when they moved to 25 Broad Street on September 1, 1901. It is of no particular consequence whether the other 400 shares were sold before or after that date, and does not tend to establish present ownership of certificate No. 390 in Blake Brothers No. 1.

The language of article Second of the declaration of trust does not materially aid appellants. It states that '' In the event of a certificate being lost the trustees, upon being satisfied thereof and indemnified, may under such reasonable regulations as they may prescribe, issue a duplicate certificate in the place of the one that has been lost and the said Trust Company shall countersign the same when presented for that purpose ''. No more important is the statement on the face of the certificates themselves that they '' are transferable only on the books of the said Trust on the surrender of this certificate ''. These clauses merely empower the trustees to replace lost certificates, but do not compel them to do so in the absence of proof that the claimant is the owner.

Neither do the provisions of section 10 of the Stock Corporation Law, even if regarded as controlling by analogy, require

the issuance of a new certificate to plaintiffs. The trial court stated that "The situation might be different if the plaintiff were a private person." Whether or not section 10 of the Stock Corporation Law applies, there could be no presumption of title in Blake Brothers if the certificates were registered in its name as a street name for the account of customers. The evidence indicates that to have been the situation with respect to a large number of shares of stock in various corporations which were registered in the name of Blake Brothers. Moreover, presumptions fail when the facts appear, and the trial court was at liberty to credit and be governed by the evidence of Blake Brothers' books in 1924 which omitted to list this item of property as an asset of the firm. Whatever importance be given to section 10, or to its cognate provision in article Second of the articles of the declaration of trust, as bearing upon the ownership of these shares in 1888 when they were first registered in Blake Brothers' name, *Matter of Speir* (69 App. Div. 149, *supra*) holds that this must be followed by proof of ownership at the time of the loss. Such proof was lacking.

Insofar as concerns plaintiffs-appellants' claim to accrued dividends, the language of section 10 of the Stock Corporation Law and of article Seventh of the Declaration of Trust — "Dividends shall be payable only to the persons who are by the books of the trustees shown to be the certificate holders at the time the dividends shall be payable" — is solely for the benefit and protection of the corporation or of the trust. The corporation, or, in this instance, the trust, could not be held liable at the instance of the actual owner if, in good faith, it had previously paid dividends to the record owner. (*Brisbane* v. *Delaware, L. & W. R. R.*, 94 N. Y. 204, 207; *Turnbull* v. *Longacre Bank*, 249 N. Y. 159.) There can be no valid argument that a corporation or trust can be compelled to pay dividends to a registered owner in the face of notice of facts and circumstances which destroy any presumption that he is the owner. Clauses of this nature would hardly protect a corporation or trust, let alone compel it to make the payments, if with knowledge that the shares belonged to somebody else, it insisted upon payment to the registered owner. This is indicated by the language in the *Brisbane* case at page 207 that "The admin-

istrator was clearly authorized to receive the dividends as the stock stood upon the books, and the defendant was bound to pay the same unless it had some notice of a change of the title, or of a transfer of the stock, or such knowledge or information as would put it upon inquiry as to the ownership thereof.'' In order to be consistent we must hold that neither the accrued dividends nor a new certificate are to be delivered to plaintiffs-appellants. If they have failed to sustain the burden of proving their ownership of the shares, they are not entitled to receive the dividends. The Utah case of *Lindner* v. *Utah Southern Oil Co.* (2 Utah 2d 74), does not aid appellants. There the actual owner of unregistered stock sued the corporation to recover dividends which had been paid to the record owner without notice of the actual ownership. A judgment for the plaintiff was reversed, and the claim dismissed upon the ground that the corporation was protected in the payment of dividends to the registered owner where it was uninformed that he was not the owner. That is different from holding that a corporation can be compelled to pay dividends to the record owner, if he has failed to prove that he is the owner when his title to the stock has been challenged.

We do not need to determine what may become of this substantial interest in the Texas Pacific Land Trust if plaintiffs are never able to succeed in establishing their ownership. The judgment appealed from dismisses the complaint without prejudice. If plaintiffs are subsequently able to discover new evidence, the judgment does not prevent them from making another attempt to assert their title successfully.

In this view of the case, we do not reach the question whether or to what extent these trustees might be personally liable in event of the issuance of a new certificate.

The judgment appealed from should be affirmed, with costs.

FULD, J. (dissenting). Only conjecture and guesswork exist to refute plaintiffs' proof that Blake Brothers & Company is the owner of the 100 shares of Texas Pacific Land Trust, represented by lost certificate No. 390.

In 1888, that certificate was issued to, and in the name of, Blake Brothers, was delivered to it, has never been transferred

on the books of the Land Trust and remains today, after all these sixty-six years, registered in the name of that firm. The certificate has been lost, but there is no evidence that it was ever indorsed or transferred or that it ever belonged to any one but Blake. Despite the passage of the many years since the issuance of the certificate — which is now worth almost $2,000,000 — no one, other than Blake, has ever made a claim of ownership and no one is even now making such a claim. In short, there is not an iota of evidence of ownership in any one except Blake, beneficial or otherwise. Indeed, during the last eighteen years, dividends have been regularly paid and no one, other than Blake, has appeared to claim those dividends, which up to the time of trial amounted to over $131,000. Nor may it be thought that this was an obscure or an unknown security, for it has at all times been listed on the New York Stock Exchange.

Such evidence as I have briefly set forth, and there is more, establishes, in my judgment, as a matter of law, proof of ownership in Blake. It is true, as urged by defendants, that Blake, as stockbroker, might have purchased the 100 shares in question for some customer or customers, but it may just as well have bought them for its own account. Since there is no evidence that it did not — in other words, since there is no evidence that it acquired the shares for some third party — the proof of record title, persisting for almost seventy years, without the assertion, or even the suggestion, of an adverse claim creates a presumption of ownership which has neither been impugned nor weakened in any way. (Cf. Stock Corporation Law, § 10; also *Butler* v. *Glen Cove Starch Mfg. Co.,* 18 Hun 47, 49; *Ganel* v. *Aleman Planting & Mfg. Co.,* 160 La. 422, 423; *Guilford* v. *Western Union Tel. Co.,* 59 Minn. 332, 344, 346; *Shore Line Oil Co.* v. *King,* 68 Nev. 183, 194.) Opposed to such proof is nothing more than unsupported speculation that some third party had an interest in the certificate.

The judgment should be reversed and a judgment entered directing defendants (1) to pay plaintiffs the dividends declared and unpaid with respect to the shares in question, and (2) to issue and deliver to plaintiffs a new certificate for 100 shares in place of the one lost, upon plaintiffs' furnishing to defend-

ants an appropriate surety company bond to indemnify them against any damages that might result from the issuance of such new certificate.

CONWAY, DESMOND, DYE and FROESSEL, JJ., concur with VAN VOORHIS, J.; FULD, J., dissents in an opinion in which LEWIS, Ch. J., concurs.

Judgment affirmed.